420 F.2d 390
 19 Wage & Hour Cas. (BN 286
 George P. SHULTZ, Secretary of Labor, United States
Department of Labor, Appellant,
v.
ADAIR'S CAFETERIAS, INC., a Corporation, Adair's Northeast
Cafeteria, Inc., a Corporation, Zuider Zee, Inc., a
Corporation, Adair's Tropical Cafeteria, Inc., a
Corporation, Adair's Catering Service, Inc., a Corporation,
Adair's Norman Cafeteria, Inc., a Corporation, Adair's
Capitol Investors Cafeteria, Inc., a Corporation, Adair's
Uptown Cafeteria, Inc., a Corporation, Adair's Downtown
Cafeteria, Inc., a Corporation, Gerald P. Adair, an
individual, and Ralph Adair, an individual, Appellees.
 No. 118-69.
 United States Court of Appeals Tenth Circuit.
 Dec. 9, 1969, Rehearing Denied March 10, 1970.
 
 Major J. Parmenter, Regional Atty., Washington, D.C. (L. H. Silberman, Sol. of Labor, Bessie Margolin, Associate Sol., and Carin Ann Clauss, Atty., United States Dept. of Labor, Washington, D.C., on the brief) for appellant.
 Robert A. Jackson of Rhodes, Hieronymus, Holloway & Wilson, Oklahoma City, Okl. (Larry G. Cassil, Oklahoma City, Okl., on the brief) for appellees.
 Before HILL, SETH and HOLLOWAY, Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 The Secretary of Labor brought suit under Section IV of the Fair Labor Standards Act,[1] to enjoin Adair's Cafeterias, Inc. (Adair's), several affiliated corporations and Adair's president and principal stockholder, Gerald P. Adair, from violating the minimum wage and maximum hour provisions of the Act and to restrain the continued withholding of unpaid wages due twenty-seven employees of the central bakery. The singular contention in a trial to the court alleged that the Adair corporations were an enterprise within the coverage of the Act and that the employees of Adair's Catering Service, Inc., not being the proper subjects of a 213 exemption, have been paid substandard wages according to 206, and have not been compensated at the statutory rate for overtime hours, under 207. The court concluded that the multi-corporation complex was fully within the coverage provisions of the Act[2] but was exempted from compliance with the wage and hour provisions vis-a-vis 213.[3] The conclusions relate that while the multi-unit organization is an 'enterprise engaged in commerce or in the production of goods for commerce' for coverage purposes, the 'enterprise' is deemed a 'retail establishment' for purposes of exemption. This deduction was sustained by concluding that the bakery is functionally integrated with the retail cafeterias and restaurant; that the bakery employees are essentially in a local retailing capacity; that the physical disconnection of the bakery from the cafeterias is immaterial; and that if the entire cluster of corporate businesses is unitarily considered for bringing the 'enterprise' within the Act's coverage, it must likewise be considered as a unit for exemption. Upon these grounds the appellees rest their case for exemption under 213(a)(2)(ii), (a)(2)(iv), and (a)(20).
 
 
 2
 The attendant facts are not disputed and appear substantially as the trial court found. Adair's is a holding company, ninety-nine per cent owned by Gerald and Ralph Adair, which manages a restaurant, six cafeterias and Adair's Catering Service, Inc. (the bakery). During the years from 1965 through January, 1967,[4] the total annual gross volume of sales of all the corporate defendants exceeded one million dollars exclusive of excise taxes, and they collectively purchased or received interstate goods for resale in the total annual amount of $250,000 or more. The annual volume of the bakery was consistently less than $250,000, with a small fraction of its purchases made out-of-state. All corporate defendants are independently managed and have no connection with each other, save the element of common control and the fact that all operate in related activities for a common business purpose.
 
 
 3
 Adair's maintains its central offices at N.E. 63rd Street, Oklahoma City. The warehouse and bakery are located in the same facility. Our attention here is focused on the twenty-seven employees engaged primarily in the preparation and delivery of pies and other pasteries from the bakery location to the eating establishments situated in and about Oklahoma City.[5] Originally each eating establishment had its own bakery to provide the daily pastry needs. Mainly for skilled labor shortage reasons, Adair's was motivated to centralize its baking function into one operation, physically separate from all cafeterias, and incorporate it to provide pastries to the eating outlets. Equipment was gathered from the several cafeterias and installed at the 63rd Street location and various of the cafeteria-bakery personnel were transferred to the new locale. With the installation of automated equipment, the bakery produces a superior and, perhaps, more economical pastry product. Retail sales are not made out of the bakery; the intercorporation transactions have been conducted on a retail credit system, maintained in Adair's central offices. The physical plant apparently is not the characteristic warehousing facility, but has, during the critical period, warehoused bakery supplies, pastry ingredients, meats purchased for cafeteria distribution, and cafeteria-restaurant supplies.
 
 
 4
 The introductory inquiry in cases of Fair Labor Standards Act application is coverage. 29 U.S.C. 206(b) essentially requires every employer to pay each person employed by an enterprise engaged in commerce or in the production of goods for commerce, as defined in 203(s)(1), (2) or (4), or by an establishment described in 203(s)(3) or (5), a minimum wage as described therein. 29 U.S.C. 207(a)(2) summarily provides that an employer shall not cause workers who are employed in an enterprise engaged in commerce, as defined in 203(s)(1) or (4), or by an establishment described in 203(s)(3), to weekly work beyond specified hourly maximums without receiving remuneration above the regular hour wage as the statute provides. That the Adair concerns are within these coverage provisions is not appealed and we henceforth presume its application. The question presented here for decision is threefold: (a) is the 'restaurant' exception in 213(a)(2)(ii) an enterprise exception; (b) does the Adair corporate enterprise qualify as a 213(a)(2) retail or service establishment; and (c) is the bakery itself a retail or service establishment?
 
 
 5
 The enactment of this federal law was an attempt by Congress to insure laboring men and women a fair day's wage for a fair day's work.[6] As remedial legislation its exceptions must be narrowly construed, 'giving due regard to the plain meaning of statutory language and the intent of Congress.' A. H. Phillips, Inc. v. Walling, 324 U.S. at 493, 65 S.Ct. at 808. The statutes under which retribution is sought, are keyed to the words 'enterprises' and 'establishments' as explained in 203(s). An enterprise is clearly defined in 203(r) but the Act is devoid of an 'establishment' definition. Notwithstanding, it is implicit in the Act that Congress did not employ these words synonymously; indeed they are contradistinguished and set out disjunctively throughout the definitional and coverage sections of the statute. The legislation tacitly suggests that the corporate structure envisaged embraces an enterprise composed of individual establishments. From the differentiation between 'establishment' and 'enterpris' in 213(a)(2) it is clear that Congress meant to use the terms in a precise way in that section as well as in the definition and coverage sections. We are aware of no cases and find no reason within the Act to justify a contrary application in 213 than that appearing in 203, 206 and 207. By its very terms 213(a)(2) applies on an 'establishment' basis.
 
 
 6
 The lower court refused to test the Adair enterprise, for exemption, on an individual establishment basis. Instead, all businesses, including the bakery, were viewed together as being proprietarily united and functionally integrated, and physical separation was considered immaterial. This proposition runs directly contrary to the letter and spirit of the Fair Labor Standards Act and does not comport with the cases interpreting that law.
 
 
 7
 Early in the life of this Act the same argument was posed before the Supreme Court and rejected as being obviously without merit. A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876 (1945) stands squarely for the lesson that an integrated enterprise function, performed in a physically distinct location, requires an independent determination of that establishment's exemption status. The Court therein defined 'establishment' as a distinct physical place of business. The key to the case was the physical distinction of the retail stores from the wholesale functions.[7] The holding of this case teaches that merely because a warehouse is within a dominantly retail enterprise, that fact alone will not conclusively require exemption of the storage place as being part of a larger, exempt chain of retail establishments. Restated, one establishment may not borrow the identity of an exempt establishment simply because of their corporate relationship. The fact that the warehouse in Phillips served stores out-of-state while Adair's operates strictly intrastate does not demand a different result here. 'While the Supreme Court mentioned * * * (it) that fact clearly did not form a basis for the * * * decision.' Mitchell v. Sunshine Department Stores, Inc., 292 F.2d 645, 647 (5th Cir. 1961). Mitchell v. Bekins Van & Storage Co., 352 U.S. 1027, 77 S.Ct. 593, 1 L.Ed.2d 589 (1957) added lustre to Phillips by flatly rejecting a case which held it 'possible for one business located in several buildings, neither contiguous nor widely scattered, to be one establishment * * *.'[8] The physical identity concept of Phillips has been persistently adhered to[9] and we see no reason to distinguish this case from that generally accepted rule.
 
 
 8
 The exemption in 213(a)(2) has a limited reach, touching only those retail or service establishments as are comparable to the local corner grocery store, local drug store or local department store which sells directly to the ultimate consumer. Prosperous retail businesses eventually lose their identity as establishments exempt from the Act. It may occur through an increased volume of interstate sales or, as here, by physically serving a non-exempt establishment. A company operating numerous food stores cannot include as a part of its retail business its candy kitchens. Fred Wolferman, Inc. v. Gustafson, 169 F.2d 759 (8th Cir. 1948). The operator of sandwich counters cannot include as retail its commissary where sandwiches are prepared. Armstrong Co. v. Walling, 161 F.2d 515 (1st Cir. 1947). Similarly, a restaurant-cafeteria chain may not include its bakery as part of its retail establishments. Appellee cites two cases as supportive of the concept that retail outlets and their warehouses are single establishments.[10] Both cases are factually distinguishable and in that light are not inconsistent with our decision.
 
 
 9
 Alternative grounds for dismissal in the trial court were 213(a)(2)(iv) and (a)(20). As a predicate to implementing either, Adair must show the bakery to be a retail or service establishment,[11] which is defined as 'an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or both) is not for resale and is recognized as retail sales or service in the particular industry.' 29 U.S.C. 213(a)(2). The bakery is an establishment but acts in neither a service nor retail capacity. Likewise it is not strictly a wholesale operation. However, categorically speaking, the bakery is more analogous to a wholesale than a retail establishment and thereby precludes exemption under either 213(a)(2)(iv) or (a)(20).[12] As was stated in Roland Electric Co. v. Walling, 326 U.S. 657, 675, 66 S.Ct. 413, 90 L.Ed. 383 (1946), 'retail' means to sell commodities in small quantities directly to ultimate consumers to meet personal rather than commercial and industrial needs, and it is correspondingly accurate to restrict the word 'services' to ultimate users of them for personal rather than commercial purposes. The only business of this bakery was providing pastries to Adair eating establishments. The public was not invited nor allowed to purchase from the bakery. The bakery did not possess sufficient indicia to characterize it as a retail or service establishment under the exemption sections.
 
 
 10
 The judgment of the District Court is accordingly reversed and the case remanded for further proceedings consistent herewith.
 
 
 
 [1]
 Act of June 25, 1938, c. 676, 52 Stat. 1060, as amended, 29 U.S.C. 201, et seq. All references hereinafter made are to the Act as amended in 1961, 29 U.S.C. 201 et seq., unless otherwise noted
 
 
 [2]
 29 U.S.C. 206 and 207
 
 
 [3]
 It is somewhat difficult to determine the precise grounds upon which the exemption was granted, since the court refers to 213(a)(2) but then, as if to cite that subsection, quotes directly from 213(a)(20). Although it is not plain from the record, we surmise another basis for decision to be 213(a)(2) (iv). In an attempt to fully consider each ground for appeal, we will consider each alternatively
 
 
 [4]
 The record alludes to violations occurring subsequent to the effective date of the 1966 amendments but the briefs are barren of reference to any post-February 1, 1967, violations and the trial court's conclusions specifically refer to the Act prior to the 1966 amendments' effective date. It should also be noted that prior to trial, plaintiff dropped its request for an injunction for future violations since defendant was then in substantial compliance with the Act
 
 
 [5]
 By pretrial stipulation it was conceded that all corporate defendants are exempt from 206 and 207 by 29 U.S.C. 213(a)(2)(ii), except Adair's Catering Service. Inc., its parent corporation Adair's Cafeterias, Inc., and the latter's president and principal stockholder, Gerald Adair, and that Ralph Adair possessed no legal responsibility therein. Adair's also concedes that if the Act applies and if no exception is available, the 27 bakery employees were underpaid under 206 and 207 and are due approximately $9730
 
 
 [6]
 Message of the President to Congress, May 24, 1934, as cited in A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876 (1945)
 
 
 [7]
 A. H. Phillips, Inc. v. Walling, 324 U.S. at 495-496, 65 S.Ct. 807
 
 
 [8]
 Mitchell v. Bekins Van & Storage Co., 231 F.2d 25, 27 (9th Cir. 1956)
 
 
 [9]
 Mitchell v. Sunshine Dept. Stores, Inc., 292 F.2d 645 (5th Cir. 1961); Mitchell v. Birkett, 286 F.2d 474 (8th Cir. 1961); Armstrong Co. v. Walling, 161 F.2d 515 (1st Cir. 1947); cf. Bogash v. Baltimore Cigarette Service, 193 F.2d 291 (4th Cir. 1951); Walling v. Ritter Foods, 159 F.2d 35 (5th Cir. 1947); but see Mitchell v. T. F. Taylor Fertilizer Works, 233 F.2d 284 (5th Cir. 1956)
 
 
 [10]
 Grimes v. Castleberry, 381 F.2d 758 (5th Cir. 1967); Mitchell v. Gammill, 245 F.2d 207 (5th Cir. 1957)
 
 
 [11]
 Boisseau v. Mitchell, 218 F.2d 734, 738 (5th Cir. 1955); Armstrong Co. v. Walling, 161 F.2d 515 (1st Cir. 1947)
 
 
 [12]
 See Armstrong Co. v. Walling, 161 F.2d 515 (1st Cir. 1947)