Peter J. **BRENNAN**, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

YELLOWSTONE PARK LINES, INC., a corporation, and Yellowstone Park Company, a corporation, Defendants-Appellees.

No. 72–1591.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 29, 1973.

Decided May 10, 1973.

Donald S. Shire, Atty., U. S. Dept. of Labor (Alfred G. Albert, Acting Sol. of Labor, Carin Ann Clauss, Associate Sol., John K. Light, Atty., U. S. Dept. of Labor, and Harper Barnes, Regional Sol., on the brief), for plaintiff-appellant.

Douglas Foster, New York City (Lovejoy, Wasson, Lundgren & Ashton, New York City, Redle, Yonkee & Arney, Sheridan, Wyo., of counsel; Lawrence A. Yonkee, Sheridan, Wyo., on the brief), for defendants-appellees.

Before BREITENSTEIN, Circuit Judge, DURFEE,* Judge, Court of Claims, and DOYLE, Circuit Judge.

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from a judgment rendered by the United States District Court for the District of Wyoming denying the petition of the Secretary of Labor for an injunction against Yellowstone Park Lines, Inc. and Yellowstone Park Company from violating the mini-

---

* Sitting by designation.

mum wage and record keeping requirements of the Fair Labor Standards Act. Plaintiff sought a judicial determination that the Act applied to the numerous employees of the Company who were working in Yellowstone National Park. Jurisdiction was founded upon 29 U.S.C. § 217 and 28 U.S.C. §§ 1337 and 1345. The trial court ruled that these employee relationships were exempt on the basis that all of the operations of Yellowstone Park Lines, Inc. and Yellowstone Park Company constituted a single establishment and as such were exempt under 29 U.S.C. § 213(a)(3), the employees being "employed by an establishment which is an amusement or recreational establishment." [1]

Based on the geographic separation of the various enterprises, the Secretary maintained that there was not a single establishment but, rather, a number of separate and distinct establishments.

The parties agreed that if each physically separate facility or location operated by defendants constituted a single establishment, the Secretary would be entitled to an injunction for violation of the Act. On the other hand, the parties agreed that if all Company operations in Yellowstone National Park constituted a single establishment, the decision should be that the defendants are exempt.

Summary judgment motions were filed by both sides, and following arguments and factual presentations in the form of affidavits, the judgment was in favor of the defendants.

Yellowstone Park Company is a Delaware corporation which owns and operates tourist facilities in Yellowstone National Park. It has a contract with the Secretary of the Interior which was first entered into in 1936 and was renewed again in 1966 for an additional term of 30 years.

The Company's concessions include hotels, inns, lodges, cabins and restaurants. These are located at widely separated places including Mammoth, Hot Springs, Old Faithful, Yellowstone Lake and Canyon Village. The Company facilities at Hot Springs are located some 51 miles from the facilities at Old Faithful, whereas the facilities at West Thumb near Yellowstone Lake are 68 miles from Mammoth, and the facilities at Roosevelt Lodge are 60 miles from Old Faithful, and were shown to be 56 miles from West Thumb.

Wide variations in the various areas are shown—different types of scenery and different formations including canyons and mountain streams, lakes and geysers. There are marked differences in the various areas in terms of size and individuality. The recreational facilities also vary from one area to another as do the hotel facilities.

Ordinarily employees are primarily attached to one facility, that at which they are working. They are supervised by the manager of that particular facility who has his own day to day standards. The accounting methods are set up so as to reveal whether each individual unit makes a profit.

Two classes of employees serve more than one facility. One group includes maids, maintenance personnel and boiler room operators, who work at more than one establishment. The other group is made up of those who work mainly at one facility, but performing work which benefits another. These are employees who work in the central accounting office, manager's office, reservations, advertising and promotion, laundries, print

---

I. 29 U.S.C. § 213 provides in part:

    (a) The provisions of sections 206 and 207 of this title shall not apply with respect to—

    \*     \*     \*     \*     \*

    (3) any employee employed by an establishment which is an amusement or recreational establishment, if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33⅓ per centum of its average receipts for the other six months of such year; or

    \*     \*     \*     \*     \*

It is undisputed that defendants meet the seasonal requirements of § 213(a)(3).

shop, personnel office, warehouse, garage, central fire watch office and ice manufacturing plant.

The manager's office, central reservations, advertising and promotion are located in the summer at Mammoth and the rest of the year at Gardiner. These offices serve each of the Company's facilities. The laundries are operated at Mammoth Lake Lodge and Old Faithful Inn and each serves several different facilities from those locations. The print shop is located at Mammoth, but serves each of the Company facilities in the Park. The personnel office, the warehouse and garage are all located in Gardiner and serve all of the Company locations and facilities.

The facilities operated by the Company are located at the major scenic places and tourist attractions in the Park, including Old Faithful Geyser, Mammoth Hot Springs, Yellowstone Lake and the Grand Canyon of Yellowstone. At Old Faithful there are several lodges including Old Faithful Inn, Old Faithful Lodge and Old Faithful Campers Cabins. At Yellowstone Lake are the Lake Hotel, Lake Lodge and Lake Hotel Cabins. All of these facilities are advertised in one brochure. The Company also maintains buses for transporting tourists from one area to another. The various facilities have a central management which includes a number of department directors. Policy decisions are made by the management and are applicable to all of the facilities.

The statutory provision which the Company claims furnishes it an exemption is § 213(a)(3) which provides an exemption for any employee employed by an amusement or recreational establishment which meets certain seasonal tests. Undoubtedly the enterprise is carried on by the Company and its wholly-owned subsidiary, Yellowstone Park Lines, Inc., and is recreational in character.

The trial court made special findings in support of the motion for summary judgment and in these findings it described in detailed fashion the operation of the Yellowstone Park Company within the Yellowstone National Park pointing out that there is central management of the numerous facilities within the Park headed up by officers of the Company and a member of the so-called department directors such as director of marketing and sales, director of food and beverage and the director of lodging. According to the findings, some 2,289 people, mostly college students, were at the time in question employed by the Yellowstone Park Company.

The court pointed out that the controlling provision of the Fair Labor Standards Act is 29 U.S.C. § 213(a)(3) and said:

> If Yellowstone Park Company qualifies as an amusement or recreational establishment within the meaning and for the purpose of that section, the Company is exempt from Sections 6 and 7 of the Act, 29 U.S.C. §§ 206 and 207, pertaining to minimum wages and maximum hours.

The court went on to hold that as a result of the integrated management of the Company it was a recreational establishment and concluded in its judgment:

> After considering the pleadings, the interrogatories and answers thereto, the affidavits filed herein and exhibits attached thereto, the request for admissions and the stipulation filed by the parties herein wherein each of the parties agreed there is no dispute as to any genuine issue of fact, and now being fully advised in the premises, the Court finds that 29 U.S.C. Section 213(a)(3) exempts the defendants from the minimum wage and overtime provisions of said Act * * *

■■ The exemption which we are now considering was provided in the Fair Labor Standards Act so as to allow recreational facilities to employ young people on a seasonal basis and not have to pay the relatively high minimum wages required by the Fair Labor Standards Act. Based on this legislative purpose the Company maintains that the provision should be given a liberal construction so

as to carry out this basic purpose. This is, however, contrary to accepted rules of construction which call for broadly construing coverage provisions and narrowly construing the exemption provisions. Also, it runs contrary to the decisions of the Supreme Court and at least one decision of this court.

An early Supreme Court case, Phillips, Inc. v. Walling, 324 U.S. 490, 65 S. Ct. 807, 89 L.Ed. 1095 (1945), considered the term "retail establishment" in connection with an exemption provided for in § 13(a)(2). Involved in the *Phillips* case was a chain enterprise consisting of 49 grocery stores together with a central warehouse and office building. It was argued in that case, much in the same manner as it is argued here, that the numerous stores, the warehouse and the office building were a single establishment so as to bring the entire enterprise within the exemption. This integration argument was, however, rejected by the Supreme Court which held that Congress used the word "establishment" to mean a distinct physical place of business rather than an integrated business or enterprise. Each unit was, therefore, held to be a separate establishment.

Much the same result was reached in Mitchell v. Bekins Van & Storage Co., 352 U.S. 1027, 77 S.Ct. 593, 1 L.Ed.2d 589 (1957), wherein it was held that the exemption did not apply to physically separate warehouses even though they were operated as a single economic unit. Once again the emphasis was placed on the term "establishment" and its meaning of a single physically separate place of business.

Finally, this court in Shultz v. Adair's Cafeterias, Inc., 420 F.2d 390 (10th Cir. 1969), had before it a case involving six cafeterias having a central bakery. The employer argued that the establishment as a whole was entitled to an exemption and the district court agreed. This decision was, however, reversed, our court ruling that the district court's determination had failed to follow the interpretation which had been given to the term "retail establishment" by the Supreme Court in the *Phillips, Inc.* and *Mitchell* cases. In reversing the district court it was said:

> The lower court refused to test the Adair enterprise, for exemption, on an individual establishment basis. Instead, all businesses, including the bakery, were viewed together as being proprietarily united and functionally integrated, and physical separation was considered immaterial. This proposition runs directly contrary to the letter and spirit of the Fair Labor Standards Act and does not comport with the cases interpreting that law.

420 F.2d at 394.

After discussing the applicability of the *Phillips, Inc.* and *Mitchell* rulings this court continued:

> The exemption in § 213(a)(2) has a limited reach, touching only those retail or service establishments as are comparable to the local corner grocery store, local drug store or local department store, which sells directly to the ultimate consumer. Prosperous retail businesses eventually lose their identity as establishments exempt from the Act. It may occur through an increased volume of interstate sales or, as here, by physically serving a nonexempt establishment. A company operating numerous food stores cannot include as a part of its retail business its candy kitchens. Fred Wolferman, Inc. v. Gustafson, 169 F.2d 759 (8th Cir. 1948). The operator of sandwich counters cannot include as retail its commissary where sandwiches are prepared. Armstrong Co. v. Walling, 161 F.2d 515 (1st Cir. 1947). Similarly, a restaurant-cafeteria chain may not include its bakery as part of its retail establishments.

420 F.2d at 394–395.

We view *Adair's* as being not only definitive of the term "establishment", but also as illustrating the broad coverage—narrow exemption approach to this Act.

We recognize that there are differences between the so-called recreational exemption which we are now considering and the retail establishment exemption considered in *Adair's Cafeterias* and in *Phillips, Inc.* as well as *Mitchell*. Much of the law which deals with the retail establishment exemption is concerned with the difference between retail and wholesale activities and with the question whether the particular retail unit is engaged in local business or interstate commerce. None of this, however, affects the basic issue presented to us which is whether the term "establishment" as used in § 13(a)(3) is to be judged in the same light as that term is judged under § 13(a)(2) and as in *Phillips, Inc., Mitchell* and *Adair's*. We are of the opinion that the distances and the heterogeneous nature of the areas of interest do not lend to the Yellowstone Park enterprises being considered as one integrated unit subject to exemption under § 13(a)(3). Thus, we must reverse the trial court's judgment holding that all of Yellowstone Park is to be considered as a single integrated recreational area.

The parties have stipulated that the plaintiff is entitled to an injunction restraining future violation of the Act if it prevails on the question of what constitutes an establishment for purposes of § 13(a)(3) of the Act. Therefore, having resolved this issue in favor of the plaintiff-appellant, it follows that the cause must be reversed and an injunction is to be granted and entered in favor of the plaintiff and against the defendants.

■ Inasmuch as a question existed at the time that this matter was orally argued as to the scope of the employees exempted and the employees covered, clarification was requested. Since the cause was argued there has been an exchange of letters and in essence the employees exempted are those who are employed by an exempt establishment. Those who are covered are, generally speaking, those central employees who serve several or all of the Company's establishments at various locations throughout the Park. In its clarification letter plaintiff-appellant adds:

We concede the applicability of the exemption to all of defendants' employees in the Park, including maids and boiler room workers, *except* central employees who perform functions which serve several, or all, of the company's establishments at the various locations throughout the Park. Among those *not* within the exemption are the following: (1) central accounting office employees (R. 39, 46–48); (2) manager's office employees (R. 48–50); (3) reservations office employees (R. 48–50); (4) advertising and promotion office employees (R. 48–50); (5) laundry employees (R. 40, 51–52); (6) print shop employees (40, 52–53); (7) personnel office employees (R. 40, 54–55); (8) warehouse employees (R. 40, 54–55); (9) garage employees (R. 40, 54–55); (10) ice manufacturing plant employees (R. 29, 40); (11) central fire watch employees (R. 56–57); and (12) central maintenance and repair workers who perform functions which serve several or all of the company's establishments in the Park (R. 51, 60–61). Since these central employees are not employed by any specific establishment, but rather by the entire enterprise, they would be exempt only if *all* of the defendants' facilities throughout the Park constitute a single "establishment."

In our view the concession contained in the plaintiff-appellant's letter is entirely consistent with the view which we have taken as to the meaning of the term "establishment."

Accordingly, the judgment of the district court is reversed, and the cause is remanded with directions to the district court to enter an injunction in accordance with the views expressed above.