Peter J. BRENNAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

TEXAS CITY DIKE & MARINA, INC., Defendant-Appellee.

No. 73–2232.

United States Court of Appeals, Fifth Circuit.

April 19, 1974.

Rehearing and Rehearing En Banc Denied May 17, 1974.

George T. Avery, Regional Sol., Heriberto de Leon, Atty., U. S. Dept. of Labor, Dallas, Tex., Carin Ann Clauss, Donald S. Shire, James B. Leonard, Jacob I. Karro, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant.

Lawrence H. Clore, A. J. Harper, II, Houston, Tex., for defendant-appellee.

Before BELL, THORNBERRY and DYER, Circuit Judges.

THORNBERRY, Circuit Judge:

The sole question presented for review is whether appellee's marina is an "amusement or recreational establishment" within the meaning of 29 U.S.C.A. § 213(a)(3) and thus exempt from the minimum wage and overtime provisions of the Fair Labor Standards Act.[1] The court below held that appellee was entitled to the exemption. We disagree and therefore reverse.

### I.

The parties have stipulated to the relevant facts. Appellee Texas City Dike & Marina, Inc. owns a marina that dispenses goods and services to people pursuing the leisure time activities of boating and fishing. Located on the shores of the Gulf of Mexico in Texas City, Texas, the marina stores, repairs, and maintains recreational boats; sells boats, motors, trailers, gasoline, and oil; rents boats and motors; provides dockside facilities for launching and retrieving boats; and sublets space for a grocery store and a bait stand. In the year in question, 1970,[2] the marina derived fifty-seven percent of its income from selling boats, motors, and trailers.[3]

William J. Kilberg, Sol. of Labor, U. S. Dept. of Labor, Washington, D. C.,

1. Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–219 (1964), as amended, (Supp. 1973).

2. The Secretary of Labor apparently sought back pay for the years 1970 and 1971. Appellee could not avail itself of the amusement exemption for the year 1971, for the marina's 1971 receipts and operating schedule did not meet the seasonality requirement of 29 U.S.C. § 213(a)(3) (Supp.1973). The parties agree that the marina's operation did meet the seasonality test in 1970.

3. The parties stipulated to the following description of the marina's 1970 income.

| | |
|---|---|
| Boats, motors and trailer sales | $ 244,977.00 |
| Petroleum products | 31,032.00 |
| Bait | 7,883.00 |
| Shop parts | 44,045.00 |
| Shop labor | 26,527.00 |
| Boat storage | 41,669.00 |
| Boat and motor rentals | 11,291.00 |
| Fork lift fees | 14,173.00 |
| Grocery stand sublet | 767.00 |
| Miscellaneous | 1,881.00 |
| Bait stand sublet | 2,365.00 |

The parties agree that the marina is an "enterprise engaged in commerce"[4] as defined by the FLSA and therefore is subject to the Act's strictures unless it is eligible for an amusement-recreation exemption under section 213(a)(3). Convinced that the exemption is unavailable, the Secretary seeks $4,668.72 in back wages and an injunction against future violations of the Act's minimum wage, overtime, child labor and record-keeping requirements. In his view the exemption is unavailable because the marina's principal activity is selling recreational equipment, not providing recreation.

Appellee Texas City Dike & Marina denies that the marina's principal activity is selling recreational equipment; its principal activity is providing "the means for recreational boating and fishing in and on the Gulf of Mexico." Appellee contends it is misleading to determine the marina's principal activity by using an income analysis, as the Secretary has done. Since its principal activity is providing recreational means and facilities, it is entitled to a recreational exemption under section 213(a)(3).

## II.

If there is any unifying principle underlying the exemptions in the FLSA, it is not evident in the Act's words or its legislative history. Reading the Act's legislative history and its exemptions leads one to conclude that the exemptions were created simply to ensure the Act's passage. Without the exemptions, the Act's opponents may have prevailed. *See* 107 Cong.Rec. 7102-5 (1961) (Remarks of Senators Holland and Dirksen); Comment, Scope of Coverage Under the Fair Labor Standards Act of 1938, 30 Wash. & Lee L.Rev. 149, 156 (1973). The absence of a unifying principle makes the exemptions' interpretation a difficult task.

The ground rules for interpreting and applying FLSA exemptions disfavor the employer. The Supreme Court has said:

> To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and frustrate the announced will of the people.

A. H. Phillips, Inc. v. Walling, 1945, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095. *See* Hodgson v. Colonnades, Inc., 5th Cir. 1973, 472 F.2d 42. Therefore we must construe exemptions narrowly against the employer seeking to assert them. Arnold v. Ben Kanowsky, Inc., 1960, 361 U.S. 388, 80 S.Ct. 453, 4 L. Ed.2d 393; Mitchell v. Kentucky Finance Co., 1959, 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815; A. H. Phillips, Inc. v. Walling, *supra*. The employer has the burden of proof to show that he is entitled to an exemption. Idaho Sheet Metal Works, Inc. v. Wirtz, 1966, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694; Arnold v. Ben Kanowsky, Inc., *supra*.

## III.

With the burden of proof and manner of construction in mind, we turn now to the exemption that appellee asserts.

> The provisions of section 206 [minimum wages] . . . and section 207 [maximum hours] of this title shall not apply with respect to—
>
> (3) any employee employed by an establishment which is an amusement or recreational establishment, if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33⅓ per centum of its average receipts for the other six months of such year; . . . .

29 U.S.C.A. § 213(a)(3) (Supp.1973). The exemption contains two requirements. The establishment must be (1) seasonal and (2) recreational. Appellee's marina unquestionably satisfied the

---

4. 29 U.S.C.A. § 203(s) (Supp.1973), amending 29 U.S.C.A. § 203(s) (1964).

seasonality requirements in 1970. *See* note 2, *supra*. The only issue is whether the marina is an "amusement or recreational establishment," a term whose definition has not been judicially explored.[5]

In interpreting and applying the exemption, our starting point will be its legislative history. Although it is skimpy, it suggests that the exemption does not cover establishments whose sole or primary activity is selling goods.[6] For example, the amusement-recreation exemption first appeared in a 1961 amendment to the FLSA that also exempted hotels, motels, restaurants, and movie theaters.[7] None of those activities principally engage in the sale of goods. They provide meals and services; they sell the temporary use of their premises. Another indication is a House of Representatives committee report which listed as exempt activities ". . . amusement parks, carnivals, circuses, sports events, parimutuel racing, sport boating or fishing. . . ."[8] None of those activities' sole or primary function is the sale of recreational goods. In a like vein is Senator Yarborough's view that the ex-

emption was meant to apply only to amusement parks.[9]

Subdivision (2) of section 213 reinforces the legislative history's suggestion that establishments selling goods do not qualify for an amusement-recreation exemption. It specifically provides a separate exemption for retail establishments whose annual sales of goods fall below $250,000. 29 U.S.C.A. § 213(a) (2) (Supp.1973).

Further support can be found in the Wage and Hour Administrator's various interpretations of the amusement-recreation exemption. Among the activities which the Administrator believes to be eligible for the exemption are golf courses,[10] amusement parks, baseball parks, racetracks, dogtracks,[11] and summer camps.[12] All of these establishments provide recreational facilities on a temporary basis; none have the sole or primary function of selling goods.

To be sure, in some instances the Administrator has approved amusement-recreation exemptions for enterprises that solely or primarily sell goods. Examples are pro shops at golf courses [13] and dry goods stores in na-

5. *Cf.* Brennan v. Yellowstone Park Lines, 10th Cir. 1973, 478 F.2d 285, cert. denied, 414 U.S. 909, 94 S.Ct. 228, 38 L.Ed.2d 147; Brennan v. Six Flags Over Georgia, Ltd., 5th Cir. 1973, 474 F.2d 18, cert. denied, 414 U.S. 827, 94 S.Ct. 47, 38 L.Ed.2d 61; Wirtz v. Freehold Racing Ass'n, D.N.J.1966, 53 CCH Lab.Cas. ¶ 31,786.

6. The Tenth Circuit has stated that the exemption's purpose is "to allow recreational facilities to employ young people on a seasonal basis and not have to pay the relatively high minimum wages required by the Fair Labor Standards Act." Brennan v. Yellowstone Park Lines, 10th Cir. 1973, 478 F.2d 285, 288. While that appears to be a logical theory, we can find nothing in the legislative history to confirm it. The legislative history simply does not directly address the purpose of the amusement-recreation exemption.

7. Act of May 5, 1961, Pub.L.No. 87–30, § 9 (a)(2)(ii), 75 Stat. 71.

8. H.R.Rep.No. 871, 89th Cong., 1st Sess. 35 (1965). The report discussed H.R. 10518, a proposed amendment to the Fair Labor Stand-

ards Act which Congress did not pass. While H.R. 10518 was not passed, the committee's examples of exempt amusement activities are relevant because the following year Congress enacted into law an FLSA amendment whose amusement-recreation exemption is quite similar to that in H.R. 10518. *Compare* 29 U.S. C.A. § 213(a)(3) (Supp.1973) *with* H.R.Rep. No. 871, 89th Cong., 1st Sess. 35 (1965).

9. 112 Cong.Rec. 20,594, 20,791 (1966). Senator Yarborough was Senate floor manager of the 1966 amendments to the FLSA.

10. Wage-Hour Op. Letter No. 600 (May 25, 1967), CCH Lab.L.Rep. ¶ 30,589 [Transfer binder, Nov. 1966–Mar. 1969].

11. Wage-Hour Op. Letter No. 623 (June 22, 1967), CCH Lab.L.Rep. ¶ 30,612 [Transfer binder, Nov. 1966–Mar. 1969].

12. Wage-Hour Op. Letter No. 903 (June 10, 1968), CCH Lab.L.Rep. ¶ 30,914 [Transfer binder, Nov. 1966–Mar. 1969].

13. Wage-Hour Op. Letter No. 648 (August 9, 1967), CCH Lab.L.Rep. ¶ 30,639 [Transfer binder, Nov. 1966–Mar. 1969].

tional parks.[14] In each instance, though, the exempted enterprise has been an integral part [15] of a supervised, geographically delimited recreational area or "establishment." By contrast the Gulf of Mexico is under no one's ownership, management or supervision, and no one can seriously argue that the Gulf, like a national park, has been set aside for recreational use. To accept appellee's argument that its marina is an integral part of the Gulf, and that the Gulf is a recreational area, would be to exempt every seaside merchant in the country and permit an exemption to swallow the FLSA. Mere proximity to a body of water is insufficient to make a retail store a recreational establishment.

### IV.

Section 213(a)(3) exempts amusement or recreational *establishments*. Since the marina is not an integral part of a larger establishment, or of a supervised, geographically delimited recreational area, the "establishment" is the marina itself. Our task is to decide whether it can be characterized as "amusement or recreational" in nature.

Characterizing the marina is made difficult by the variegated nature of the goods sold and services performed on its premises. The marina sells products ranging from expensive marine hardware to cheap convenience items, and performs a variety of boat maintenance services. While it may be somewhat artificial to apply one label to such a varied mixture of activities, the Act requires that we must. After all, our task is to decide whether the amusement-recreation tag should be applied to appellee's marina.

Since the marina's activities are multifaceted, we have concluded that its principal activity should be determinative of the marina's eligibility for an exemption.[16] To determine the nature of the marina's principal activity we shall apply an income test. The marina's major income source will be its principal activity. Appellee objects to that test, saying that the relatively high price of boats and motors compared to bait, groceries, and boat rentals will distort our picture of the marina's true character. We note, however, that other sections of the FLSA have long relied on dollar measurements; section 203, for example, uses dollars to determine if one is engaged in commerce.[17] And since the test is easy to apply, employers will be able to predict whether they can qualify for the amusement-recreation exemption.

In this case, the marina derived fifty-seven percent of its income from boat, motor, and trailer sales.[18] Thus

---

14. Wage-Hour Op. Letter No. 632 (July 5, 1967), CCH Lab.L.Rep. ¶ 30,622 [Transfer binder, Nov. 1966–Mar. 1969].

In Wage-Hour Op. Letter No. 1170 (April 9, 1971), CCH Lab.L.Rep. ¶ 30,740 [Transfer binder, Mar. 1969–June 1973], the Administrator approved an amusement-recreation exemption for a combination souvenir stand-bus service at a Civil War battlefield. The opinion letter does not state, however, whether souvenir selling was the establishment's principal activity.

15. The *pro shops and attached golf courses* had a common owner. Wage-Hour Op. Letter No. 648, *supra*. The dry goods stores had an exclusive contract with the National Park Service, which limited their merchandise. Wage-Hour Op. Letter No. 632, *supra*. Thus the sales activity was in a contractual or subordinate relationship with the recreational area's owner; the relationship contained something more than mere physical proximity to a recreational area.

16. Representative Dent, House floor manager of the 1966 FLSA amendments, suggested the "principal activity" test in response to the question whether a resort hotel could earn an amusement-recreation exemption. He said the hotel's eligibility for such an exemption would depend on whether recreation was the principal activity in that geographical area. 112 Cong.Rec. 11,366 (1966).

17. 29 U.S.C.A. § 203(s) (Supp.1973), amending 29 U.S.C.A. § 203(s) (1964). In addition, the FLSA uses monetary tests to determine whether a business is small enough to qualify for a retail-service establishment exemption, or whether it is seasonal enough to qualify for the amusement-recreation exemption. 29 U.S.C.A. §§ 213(a)(2) and 213(a)(3) (Supp.1973).

18. *See* note 3, *supra*.

the income test shows that the marina's principal activity is selling expensive recreational hardware. Therefore we conclude the marina is ineligible for exemption as an amusement or recreational establishment.

We believe our refusal to grant appellee an exemption produces an equitable result. If one's principal business is selling expensive equipment, he has no unusual need for cheap labor. To appreciate this point one need only contrast a sporting goods store with a baseball park and its army of ushers, ticket takers, maintenance workers, and food vendors.

To summarize, we conclude that appellee's marina is principally engaged in selling boats, motors and trailers. The language, legislative history, and previous administrative interpretations of the FLSA all indicate that such an activity was not intended to be exempt under the rubric of amusement and recreation. Therefore we reverse the decision below and remand for the trial court to issue an appropriate injunction and award back pay for the year 1970.

Reversed and remanded.