**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 15 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

PAUL C. CHESSIN; CHRISTOPHER
T. FORMAN; MICHAEL P. GALVIN;
CARLA D. HANSON; DANIEL C.
HASKIN; LEE R. STRAND; KARIN
E. UEHLING, and other persons
similarly situated,

      Plaintiffs-Appellants and Cross-
      Appellees,

vs.

KEYSTONE RESORT
MANAGEMENT, INC., a Colorado
corporation,

      Defendant-Appellee and Cross-
      Appellant.

Nos. 98-1181, 98-1183

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### (D.C. No. 94-D-179)

---

David Lichtenstein, Denver, Colorado, for the Plaintiffs-Appellants/Cross-
Appellees.

Susan Strebel Sperber (Michael D. Nosler and Samuel M. Ventola with her on the
briefs) of Rothgerber, Johnson, & Lyons, Denver, Colorado, for the Defendant-
Appellee/Cross-Appellant.

---

Before **BALDOCK**, **KELLY**, and **MURPHY**, Circuit Judges.

**KELLY**, Circuit Judge.

This interlocutory appeal arises from an employment suit by ski patrollers against their employer Keystone Resorts Management, Inc. ("KRMI"). Plaintiffs seek to recover overtime pay at one-and-a-half times the rate at which they were regularly employed, liquidated damages, reasonable attorney fees, and costs. The district court denied Plaintiffs' motion for partial summary judgment under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, holding that Keystone Ski Area ("Keystone") and Arapahoe Basin Ski Area ("Arapahoe Basin") each constitute an amusement or recreational establishment within the meaning of 29 U.S.C. § 213(b)(29), one of several exemptions to the general overtime rule, 29 U.S.C. § 207(a). At all relevant times, KRMI owned and operated Keystone and Arapahoe Basin.

Plaintiffs appeal the district court's ruling that (1) Defendant KRMI operated a recreational establishment; (2) Arapahoe Basin is separate from Keystone for § 213(b)(29) purposes; and (3) applicability of the exemption should be determined on a plaintiff-by-plaintiff and workweek-by-workweek basis. KRMI cross-appeals the court's determination that it may not retrospectively benefit from the exemption. Our jurisdiction arises under 28

U.S.C. §1292(a), and we affirm.

Background

The seven named Plaintiffs and twenty-nine additional Plaintiffs who filed written consents under 29 U.S.C. § 216(b) (requiring written consent for employee to be named as party plaintiff in suit under the FLSA) worked as ski patrollers at Keystone or Arapahoe Basin and were employed by KRMI. KRMI operated an all-season resort in Colorado that included lodging, retail stores, restaurants, a convention center, and real estate sales and development, in addition to skiing.[1] These facilities were located on or near National Forest System lands. Plaintiffs' duties as ski patrollers encompassed snow and terrain management, search and rescue, public relations and customer service. In addition to performing tasks on the ski mountains, patrollers rode shuttle buses serving the ski and hospitality areas and provided information to resort guests on the buses.

Plaintiffs sought partial summary judgment, contending that § 213(b)(29) did not apply to KRMI, or any portion of KRMI, because it was not a recreational establishment. KRMI then filed its own motion for summary judgment, claiming

---

[1] After this case arose, KRMI was acquired by Vail Associates and is now known as Vail Summer Resorts, Inc.

that Plaintiffs were not entitled to overtime compensation because they came under the § 213(b)(29) exemption. In denying the Plaintiffs' motion, the district court held that Keystone and Arapahoe Basin constitute separate amusement or recreational establishments within the meaning of § 213(b)(29). Section 213(b)(29) states that

> The provisions of . . . section 207 . . . shall not apply with respect to – any employee of an amusement or recreational establishment located in a national park or on land in the National Wildlife Refuge System if such employee (A) is an employee of a private entity engaged in providing services or facilities in a national park or national forest, or on land in the National Wildlife Refuge System, under a contract with the Secretary of the Interior or the Secretary of Agriculture, **and** (B) receives compensation for employment in excess of fifty-six hours in any workweek at a rate not less than one and one-half times the regular rate at which he is employed [.]

Id. (emphasis added).

The court found a genuine issue of material fact as to whether Plaintiffs worked any weeks longer than fifty-six hours but held that, "[i]f . . . Plaintiffs present evidence at trial that they worked in excess of 56 hours and were not compensated, Defendant is not entitled to the exemption claimed in § 213(b)(29)." Aplt. App. at 521.

KRMI subsequently asked the district court to reconsider its holding that the § 213(b)(29) exemption would not apply if Plaintiffs could prove that they worked in excess of fifty-six hours without overtime compensation. KRMI also asked the court to clarify how the exemption would be applied. The court denied

reconsideration, explaining that each Plaintiff would be compensated at a time-and-a-half rate for work in excess of forty hours in any week for which he worked more than fifty-six hours without overtime pay. It also concluded that "each work week must be analyzed separately" to determine the applicability of § 213(b)(29), and "each Plaintiff will bear the burden of proving at trial that he/she worked in excess of 56 hours in a work week and did not receive overtime pay for those hours." Aplt. App. at 584. The parties then requested, and were granted, leave to bring an interlocutory appeal from the district court's ruling on the FLSA claim.

The parties do not dispute that (1) prior to October 1993, KRMI paid Plaintiffs a salary and did not provide overtime compensation, and (2) Plaintiffs worked overtime hours. However, the number of weeks in excess of fifty-six hours (if any) that each Plaintiff worked remains in dispute.

Discussion

The denial of summary judgment is reviewed de novo on an interlocutory appeal. See, e.g., Evanston Ins. Co. v. Stonewall Surplus Ins. Co., 111 F.3d 852, 857-58 (11th Cir. 1997). We apply the same standard as the district court, and summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Butler v Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999). In reviewing a denial of summary judgment, "we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Butler, 172 F.3d at 745 (quoting Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996)).

In a case involving the FLSA, an employer bears the burden of proving both the nature of the "establishment" it operates and the applicability of an FLSA exemption; we must construe the exemption narrowly against the employer. See Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 394 n.11 (1960).

## I. Separate Establishments

Plaintiffs argue that the district court failed to identify the correct establishment in assessing the applicability of the § 213(b)(29) exemption. The court concluded that Keystone's ski area and non-skiing operations constitute a single establishment but that Arapahoe Basin is separate from Keystone. Plaintiffs challenge the ruling that Keystone and Arapahoe Basin are separate establishments. In their view, KRMI's "operations, marketing, and strategic

plan," combined with "[t]he close proximity of Arapahoe Basin to Keystone's lodging facilities, and brevity of the shuttle bus ride between them" show that Arapahoe Basin and Keystone comprised a single establishment during the relevant time period. Aplt. Br. at 30.

In focusing on administrative and economic integration, Plaintiffs misconstrue the meaning of "establishment" under the FLSA. Both the Supreme Court and the Tenth Circuit have held that "Congress used the word 'establishment' to mean a distinct physical place of business rather than an integrated business enterprise." Brennan v. Yellowstone Park Lines, Inc., 478 F.2d 285, 289 (10th Cir. 1973) (citing Phillips, Inc., v. Walling, 324 U.S. 490 (1945)). In Yellowstone Park Lines, we reasoned that, because of the physical distance between restaurants, hotels, and other types of lodging and services within Yellowstone Park, such businesses could not be "considered as one integrated unit subject to exemption under [29 U.S.C. § 213(a)(3)]," the provision governing seasonal recreational establishments. See id. at 290. The various establishments were "separate," even though central management made policy for all of them and at least two classes of employees served more than one establishment. See id. at 288-89; see also 29 C.F.R. 779.23 (1998) (the word "establishment," as it appears in § 213(b), means "a 'distinct physical place of business' rather than . . . 'an entire business or enterprise' which may include

several separate places of business").

The case law in at least one other circuit also supports the district court's ruling on the "separate establishment" issue. In Mitchell v. Birkett, 286 F.2d 474, 477-78 (8th Cir. 1961), two photography shops located nine miles apart were deemed separate establishments under the FLSA. The Eighth Circuit stated:

> Common ownership and close functional and economic relationship between physically separated units of a business are not sufficient to make such combined units a single establishment, particularly where, as here, the geographic separation is substantial.

Id. at 478. Although the Yellowstone establishments were more than fifty miles apart, a much greater distance than that between Keystone and Arapahoe Basin, see Yellowstone Park Lines, 478 F.2d at 287, Birkett demonstrates that some courts consider only a few miles a "substantial" geographic separation for the purposes of the FLSA. See Birkett, 286 F.2d at 477-78.

In the instant case, Plaintiffs allege that the two ski areas marketed their operations as one enterprise, exchanged some employees, and lacked separate accounting and management. However, issues of business integration are not dispositive in determining whether establishments are separate. Given the six-mile separation between Arapahoe Basin and Keystone, we hold that they constitute separate establishments for the purposes of § 213(b)(29).

## II. Amusement or Recreational Establishment

According to Plaintiffs, KRMI did not constitute a recreational establishment for the purposes of § 213(b)(29) because providing ski facilities could not be considered KRMI's principal activity or purpose. See Hamilton v. Tulsa County Public Facilities Authority, 85 F.3d 494, 498 (10th Cir. 1996) (stating that inquiry into recreational character looks to "primary purpose" of the establishment). Since we consider Arapahoe Basin a separate establishment under § 213(b)(29), the only question is whether Keystone's facilities are primarily recreational. Arapahoe Basin offers few, if any, attractions for the business traveler or retail customer; such facilities are all located at Keystone.

In support of their position, Plaintiffs contend that Keystone derives substantial revenue from allegedly non-recreational sources, such as hotels, restaurants, retail stores, and a convention center, and that many of its clients visit on business trips. Because lodging and food sales represent Keystone's second largest revenue source, aside from ski operations, see Aplt. App. at 741-56, the contentions that lodging is not "recreation" and that Congress did not intend the FLSA's recreational establishment exemption to extend to full-service resorts represent the crux of Plaintiffs' challenge.

We need not decide whether lodging, isolated from Keystone's overall business, constitutes recreation within the meaning of § 213(b)(29). Rather, our inquiry centers on whether lodging and other services like restaurants and retail

shops, viewed in the context of Keystone's operations on or near national forest land, have a recreational nature.  This an issue of first impression in the Tenth Circuit.  According to Plaintiffs, <u>Hamilton</u> establishes that "[i]t is the character of the revenue producing activity which affords the employer the protection of the exemption."  <u>See</u> 85 F.3d  at 497.  However, the <u>Hamilton</u> court was concerned with a different issue – whether the proper focus of its exemption inquiry was the character of the establishment's revenue-producing activity, rather than the type of work performed by the employee, as the plaintiff urged. <u>See</u> <u>id.</u> at 497-98.

Another Tenth Circuit case appears to lend support to KRMI's position.  In <u>Yellowstone Park Lines</u>, we noted (but did not hold) that the facilities operated by Yellowstone Park Company and its subsidiary –  including many hotels and cabins –  were "[u]ndoubtedly . . . recreational in character." <u>Yellowstone Park Lines</u>, 478 F.2d at 288.[2]  The sparse legislative history confirms that § 213(b)(29) requires "concessioners providing accommodations, food and other consumer goods in 'national parks'" to "pay employees . . . time-and-one-half their regular rate of pay for all hours over 56 in a week."  H.R. Rep. No. 95-521, at 34 (1977),

---

[2]  The only issue in <u>Yellowstone Park Lines</u> was whether the facilities constituted one establishment.  The parties stipulated that, if the court deemed establishments "separate," the seasonal recreational exemption, 29 U.S.C. § 213(a)(3), would apply.  <u>See</u> <u>Yellowstone Park Lines</u>, 478 F.2d at 287.

reprinted in 1977 U.S.C.C.A.N. 3201, 3235.

Plaintiffs cite Brennan v. Texas City Dike & Marina, Inc., 492 F.2d 1115 (5th Cir. 1974) for the proposition that a ruling in KRMI's favor will allow any merchant or lodging provider in the Rocky Mountains to circumvent the general overtime provisions of the FLSA – thus creating a vast overtime exemption that Congress did not intend. Plaintiffs exaggerate the potential impact of affirming the district court's orders. Moreover, Texas City Dike is distinguishable from Plaintiffs' case. In Texas City Dike, a marina, located on the Gulf of Mexico and deriving its principal revenue from the sale of boats, motors, and trailers, was found ineligible for the § 213(a)(3) exemption. See id. at 1119-20. The Fifth Circuit reasoned that, unlike a national park, the Gulf was not set aside for recreational use. Indeed, the court acknowledged, "enterprises that solely or primarily sell goods" may qualify for the § 213(a)(3) exemption if they contract to operate in a "geographically delimited" area designated for recreational use. Id. at 1118-19; see id. at 1119 n.15. "Examples are pro shops at golf courses and dry goods stores in national parks." Id at 1118-19 (footnotes omitted).

By similar logic, § 213(b)(29) applies to Keystone. The parties do not dispute that both the Keystone and Arapahoe Basin ski areas occupy national forest land and that KRMI obtained a special use permit from the Department of Agriculture, authorizing it to maintain a "four season recreation resort" in the

White River National Forest. Aplt. App. at 158 (emphasis omitted); see Aplt. Br. at 7. Thus, the fact that Keystone offers lodging, retail shops, restaurants and other activities besides skiing does not disqualify it from the § 213(b)(29) exemption. The evidence also establishes that, on an annual basis, ski operations represent the largest revenue-producing category for Keystone. See Aplt. App. at 745-56. Thus, we hold that Keystone and Arapahoe Basin were, at all relevant times, recreational establishments within the meaning of § 213(b)(29).

We decline to require an enterprise to derive a certain percentage of revenue from strictly recreational activities in order to be considered recreational. Although the Texas City Dike court used an income test to determine whether providing recreation constitutes an enterprise's principal activity, see Texas City Dike, 492 F.2d at 1119-20, the Tenth Circuit has never held that financial percentages are the only relevant factors. We prefer to examine the totality of the circumstances, including but not limited to the establishment's primary purpose; activities and services, such as restaurants and shops, that it offers incidental to its recreational facilities; its relationship to land set aside for recreational use; and its revenue sources.[3]

---

[3] KRMI urges us to give great deference to Colorado Department of Labor Minimum Wage Order 22 and a brief letter from a Department of Labor investigator concluding that Keystone is a recreational establishment. Given our disposition of the "separate establishment" and "recreational establishment" issues, we need not decide what deference we owe these documents. We note,

III.    Calculation of Overtime Compensation Owed to Plaintiffs

A.  Whether KRMI Has Lost the Benefit of the Exemption

The district court held that KRMI does not qualify for the § 213(b)(29) exemption for any workweek in which a Plaintiff can prove that he worked more than fifty-six hours without time-and-a-half compensation.  KRMI is not eligible for the exemption under these circumstances, the court reasoned, because § 213(b)(29) embodies two conditions, both of which must be met.  First, the employee must work for a recreational establishment in a national park or national forest or on National Wildlife Refuge System land.  See § 213(b)(29)(A).  Second, the employee must "receiv[e] compensation for employment in excess of fifty-six hours in any workweek at a rate not less than one and one-half times the regular rate."  See § 213(b)(29)(B).  According to the district court, KRMI must compensate each Plaintiff at a time-and-a-half rate for work in excess of *forty* hours during any given week that KRMI failed to comply with § 213(b)(29)(B).

KRMI disputes this interpretation, contending that violation of § 213(b)(29)(B) means only that the employer must retroactively comply – i.e., that

however, that the latter document is neither admissible as a proper affidavit under Fed. R. Civ. P. 56(e), nor does it demonstrate the thorough consideration and reasoning necessary to provide guidance to this court.  See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).

it must pay the employee overtime for work in excess of *fifty-six* hours. In support of its position, KRMI cites several cases regarding failure to comply with the conditions of other FLSA exemptions. See Martin v. Coventry Fire Dist., 981 F.2d 1358 (1st Cir. 1992) (construing § 207(k) overtime exemption for firefighters and law enforcement officers); Mills v. State of Maine, 853 F. Supp. 551 (D. Maine 1994) (construing § 207(k) exemption for state probation officers); Lantz v. B-1202 Corp., 429 F. Supp 421 (E.D. Mich. 1977) (interpreting § 213(b)(8)(A) overtime exemption for restaurant employees). Two principles are common to these opinions. First, they suggest that receipt by an employee of overtime compensation according to the provisions of a FLSA exemption is *not* a condition precedent to the exemption's applicability. See Lantz, 429 F. Supp. at 424. Second, two of the cases cite the penalty provision of the FLSA, 29 U.S.C. § 216, for the rule that "an employer who fails to pay statutorily required overtime . . . must simply pay the overtime owed (if the violation is merely technical and in good faith)." Coventry Fire Dist., 981 F.2d at 1360; see Mills, 853 F. Supp. at 552. None of these cases construes §213(b)(29), however, and unlike KRMI, the defendant in Lantz was faced with a relatively new statutory amendment, which arguably excused its failure to comply. See Lantz, 429 F. Supp. at 423.

We next consider our precedent. In Spradling v. City of Tulsa, 95 F.3d

1492, 1504-05 (10th Cir. 1996), we stated that an employer must affirmatively prove that it qualified for a FLSA exemption either because (1) it publicly declared its intent to establish a regime satisfying the exemption, or (2) the employee's working conditions actually met the requirements of the exemption. Although the employer failed to carry its burden in Spradling, proof that it actually paid overtime compensation in accord with § 207(k) does not seem to have been required. However, because Spradling involved a § 207(k) exemption, it does not provide a good model for determining whether KRMI adopted § 213(b)(29).

Interpreting § 207(k), which authorizes the establishment of non-traditional work periods for firemen, the Spradling court held that "a public employer may establish a 7(k) work period even without making a public declaration, as long as its employees actually work a *regularly recurring* cycle of between 7 and 28 days." Spradling, 95 F.3d at 1505 (quoting McGrath v. City of Philadelphia, 864 F. Supp. 466, 476 (E.D. Pa. 1994)) (emphasis added). To trigger the exemption, the evidence had to show that the firemen regularly adhered to the § 207(k) work period. Thus, the mere fact that a ski patroller worked at least one fifty-six-hour week per season does not prove that KRMI adopted § 213(b)(29).

We are thus faced with an issue of first impression in the Tenth Circuit – whether to construe § 213(b)(29) to exempt KRMI from normal overtime rules

- 15 -

based on a policy that it *retrospectively* adopted in response to this lawsuit. Although the First Circuit took this road, see Coventry Fire Dist., 981 F.2d at 1360, we decline to follow its lead. Section 213(b)(29) – which consists of two conditions joined by the word "and" – is meaningless if an employer does not have to satisfy both conditions. See Usery v. Associated Drugs, Inc., 538 F.2d 1191, 1193-94 (5th Cir. 1976) (holding that, to avail itself of the "professional employees" exemption under § 213(a)(1), employer had to prove "each of the conditions or standards prescirbed by the Regulations"). If KRMI cannot demonstrate compliance with § 213(b)(29)(B), it must pay overtime compensation as required by §207(a).

B. Week-by-Week, Plaintiff-by-Plaintiff Determination

The district court ruled that "each work week must be analyzed separately" and "the exemption must be applied individually on a Plaintiff by Plaintiff basis." Aplt. App. at 584. The language of § 213(b)(29) supports a plaintiff-by-plaintiff approach because it refers to "any employee" (instead of the plural "employees") and because it makes the exemption contingent on what kind of establishment the employee works for and whether he receives overtime pay, rather than on the employer's overarching policy. Many of the regulations for implementing the FLSA also center on the employees covered by the Act, instead of employers

subject to it.  See, e.g., 29 C.F.R. § 778.103 (1998) (referring to any workweek in which "an employee is covered by the Act and is not exempt from its overtime pay requirements").

A workweek-by-workweek approach is also bolstered by the plain language of the statute and regulations.  Section 213(b)(29) refers to "any workweek," rather than some alternate unit of time, see 29 U.S.C. § 213(b)(29)(B), and as KRMI notes, regulations governing the application of § 207 make the workweek the proper unit for calculating overtime compensation.  See 29 C.F.R. § 778.103. The applicability of the § 213(b)(29) exemption must be determined on a plaintiff-by-plaintiff and workweek-by-workweek basis.

For the foregoing reasons, the district court's interlocutory orders are AFFIRMED.