Filed 8/5/16 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS MORALES, and ROES 1 through 100, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>22ND DISTRICT AGRICULTURAL ASSOCIATION,<br><br>    Defendant and Respondent. | D067247<br><br><br>  (Super. Ct. No. 37-2013-40938-CU-       OE-CTL)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on July 13, 2016, be modified as follows:

1.      On page 28 of the opinion the last sentence in subpart d, addressing "Appellants' Proposed Special Jury Instruction Number 5" is deleted, and the following inserted:

> On this record, any assumed error in not giving the proposed
>
> instruction was not prejudicial.

2.      On page 44 of the opinion the last sentence of the first paragraph is deleted, and the following inserted:

> As relevant here, it exempts "any employees directly employed by the
>
> State or any political subdivision thereof, including any city, county,
>
> or special district."  (Cal. Code Regs., tit. 8, § 11100(1)(C).)

There is no change in judgment.

The petitions for rehearing are denied.

BENKE, Acting P. J.

Copies to:  All parties

Filed 7/13/16 (unmodified version)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS MORALES et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>22ND DISTRICT AGRICULTURAL ASSOCIATION,<br><br>    Defendant and Respondent. | D067247<br><br><br><br>(Super. Ct. No. 37-2013-40938-CU-OE-CTL) |

APPEAL from an order and judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Order affirmed in part and reversed in part; judgment affirmed.

Law Offices of David J. Gallo and David J. Gallo for Plaintiffs and Appellants.

Gordon & Rees, James J. McMullen, Matthew G. Kleiner, Autumn Moody and Justin Michitsch for Defendant and Respondent.

This appeal addresses a collective action alleging nonpayment of overtime, as required by state law under Labor Code[1] section 510 and federal law under the Fair Labor Standards Act of 1938 (FLSA, 29 U.S.C. § 201, et seq.).  We conclude that the trial court

---

[1]    Undesignated statutory references are to the Labor Code unless otherwise specified.

properly entered judgment for the defendant on the FLSA claim. Defendant proved the amusement or recreational exemption (29 U.S.C. § 213(a)(3), the amusement exemption) as an affirmative defense and plaintiffs failed to show error in the denial of their nonsuit motion, in the jury instructions, in the verdict form or in the court's exclusion of witnesses from the courtroom. We also conclude that the trial court properly sustained defendant's demurrer to the section 510 claim, but further conclude that the court erred in denying leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jose Luis Morales and 177 other similarly situated plaintiffs (collectively appellants) sued their employer, the 22nd District Agricultural Association of the State of California (the DAA), alleging nonpayment of overtime, as required by state law under section 510 and federal law under the FLSA. The DAA is a California agency that owns and manages the Del Mar Fairgrounds (Fairgrounds) and the Del Mar Horsepark (Horsepark). The DAA leases out part of the Fairgrounds property to the Surf & Turf Recreation Golf Center (Recreation Center). Also on the Fairgrounds property is a satellite wagering facility, which is leased to another entity. The Horsepark is located on another parcel of land, located about three miles from the Fairgrounds.

Appellants are seasonal employees of the DAA who assist with amusement and seasonal operations. Appellants are limited to working 119 days in a calendar year and are internally referred to as "119-day employees." Appellants are not limited as to the number of hours that they may work in those 119 days. Appellants filed a putative class action against the DAA to recover penalties and damages for alleged violations of state and

4

federal overtime laws. The trial court sustained, without leave to amend, the DAA's demurrer to appellants' section 510 cause of action. After the trial court conditionally certified the case as a collective action, the DAA answered the complaint, asserting the amusement exemption as an affirmative defense to the remaining federal claim. Under this exemption, an employee of an amusement or recreational establishment is not entitled to overtime compensation if certain criteria are met. (29 U.S.C. § 213(a)(3).)

In response to a court-approved notice, 177 individuals joined the action as additional plaintiffs. The trial court bifurcated the action; the parties stipulated that the first phase of trial would be for the exclusive purpose of adjudicating the DAA's affirmative defense regarding the applicability of the amusement exemption. Any remaining issues would subsequently be tried before a new jury.

After conclusion of the DAA's evidence, the trial court denied appellants' oral motion for nonsuit. The jury rendered a special verdict in favor of the DAA and the court later entered judgment. Thereafter, the parties submitted a stipulation regarding the form of judgment and attached a proposed judgment. The trial court endorsed the parties' stipulation, but did not separately enter the agreed form of judgment. Appellants contend, and the DAA does not contest, that the initial judgment, as modified by the order approving the parties' stipulation, constitutes a final, appealable judgment. Appellants timely appealed from the order sustaining the demurrer and from the judgment.

DISCUSSION

Appellants contend that reversal of the judgment in favor of the DAA on their FLSA claim is required because the trial court: (1) improperly denied their nonsuit motion; (2) erred in instructing the jury; (3) provided an erroneous special verdict form; and (4) improperly excluded party witnesses from the courtroom. We address these contentions in part I of this opinion, concluding that appellants have not met their burden to demonstrate reversible error. In part II of the opinion, we conclude that the trial court properly sustained the DAA's demurrer to appellants' section 510 claim, but further conclude that the court erred in denying leave to amend.

## I. *FLSA Claim*

### A. Legal and Factual Background

The FLSA requires that an employer pay overtime wages to employees unless those employees are classified as exempt employees under applicable law. (29 U.S.C. §§ 207, 213.) The FLSA requires overtime pay only if an employee works more than 40 hours per week, regardless of the number of hours worked during any one day. (29 U.S.C. § 207(a)(1).) However, the FLSA provides for a number of exemptions to this general rule. (29 U.S.C. § 213.) One of these exemptions is the amusement exemption that applies to any employee of an establishment whose business is to provide amusement or recreation. (29 U.S.C. § 213(a)(3).)

The amusement exemption states, in relevant part, that it applies to "any employee employed by an establishment which is an amusement or recreational establishment, organized camp, or religious or non-profit educational conference center, if (A) it does not

6

operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 ⅓ per centum of its average receipts for the other six months of such year . . . ." (29 U.S.C. § 213(a)(3).)[2]

The amusement exemption thus has two main elements: first, the business must qualify as an "amusement or recreational" establishment and second, the establishment must satisfy either the duration test or the receipts test. (29 U.S.C. § 213(a)(3); 29 C.F.R. § 779.385 (2015).) The first element has two subparts: (1) identifying the "establishment" and (2) determining the "amusement or recreational" nature of that establishment. "The logical purpose of the [amusement exemption] is to exempt . . . amusement and recreational enterprises . . . which by their nature, have very sharp peak and slack seasons . . . . Their particular character may require longer hours in a shorter season, their economic status may make higher wages impractical, or they may offer non-monetary rewards." (*Brock v. Louvers and Dampers, Inc.* (6th Cir. 1987) 817 F.2d 1255, 1259.)

Appellants contend that they are entitled to overtime wages under the FLSA. As an affirmative defense, the DAA asserted that it is exempt from the FLSA under the amusement exemption. The matter proceeded to trial, at which the DAA presented evidence that it is exempt from the FLSA under the amusement exemption. After the conclusion of the DAA's evidence, appellants orally moved for nonsuit, asserting that, as a matter of law, the amusement exemption did not apply because the DAA failed to show:

---

[2] For ease of reference, we refer to subpart (A) of the amusement exemption as the "duration test" and subpart (B) as the "receipts test."

7

(1) that it existed to promote youth summer employment, and (2) that the majority of its income was derived from amusement or recreation. The trial court denied the motion, concluding that the evidence could support a finding that the DAA operated as a single establishment, that the nature of that single establishment was amusement or recreational, and that it satisfied the receipts test.

B. Eligibility for Amusement Exemption

As a preliminary matter before we examine the nonsuit motion, the parties dispute whether eligibility for the amusement exemption turns on (1) the nature of the employer's revenue producing activities, or (2) the work performed by the employee. As appellants note, this question is of great importance to this appeal because it impacts the order denying nonsuit and some of the challenged jury instructions. The parties have not cited, and we have not found, any California case law addressing this issue. The parties rely on federal case law. While we are not bound to follow federal court precedent, " 'numerous and consistent' " federal decisions may be particularly persuasive when they interpret federal law. (*Etcheverry v. Tri–Ag Service, Inc.* (2000) 22 Cal.4th 316, 320-321.)

Relying on *Brennan v. Six Flags Over Georgia, Ltd.* (5th Cir. 1973) 474 F.2d 18 (*Six Flags*), appellants contend that it is the "nature [or character] of the work" and "not the source of the remuneration, that controls" and "gives rise to the need for [the amusement] exemption." (*Id.* at p. 19.) About a year later, however, the Fifth Circuit came to the opposite conclusion, holding that an employer's "principal activity should be determinative of [its] eligibility for an exemption." (*Brennan v. Texas City Dike & Marina, Inc.* (5th Cir. 1974) 492 F.2d 1115, 1119 (*Texas City*).) The Fifth Circuit provided no reason in *Texas*

8

*City* regarding its change in position.  (*Ibid.*)  The Sixth, First and Tenth Circuits later adopted the Fifth Circuit's new position that it is the employer's principal activity that controls.  (*Marshall v. New Hampshire Jockey Club, Inc.* (1st Cir. 1977) 562 F.2d 1323, 1331, fn. 4  (*Marshall*); *Brennan v. Southern Productions, Inc.* (6th Cir. 1975) 513 F.2d 740, 746-747; *Hamilton v. Tulsa County Public Facilities Authority* (10th Cir. 1996) 85 F.3d 494, 497; *Chessin v. Keystone Resort Management, Inc.* (10th Cir. 1999) 184 F.3d 1188, 1193-1194 (*Chessin*).)[3]  We find these "numerous and consistent" federal circuit court decisions to be persuasive on the issue.  (*Conrad v. Bank of America* (1996) 45 Cal.App.4th 133, 150.)

Moreover, appellants have not provided a reasonable basis for us to reject these decisions.  As one court noted, the plain language of the amusement exemption suggests that the inquiry "turns on the nature of the employer's business, not on the nature of the employee's work."  (*Marshall*, *supra*, 562 F.2d at p. 1331, fn. 4.)  Additionally, the applicable federal regulations state that exemptions "depend on the character of the establishment."  (29 C.F.R. § 779.302 (2015).)  "[I]f the establishment meets the tests enumerated in these sections, employees 'employed by' that establishment are generally exempt" from the FLSA's overtime provision.  (*Ibid.*)  Finally, a formal opinion letter from the U.S. Department of Labor (DOL), Wage and Hour Division provides:  "Whether or not an establishment has an 'amusement or recreational' character for purposes of the section

---

3    In *Donovan v. S & L Development Co.* (9th Cir. 1981) 647 F.2d 14 (*Donovan*), the Ninth Circuit cited *Six Flags* when addressing whether the FLSA applied to the business at issue.  (*Id.* at pp. 16-17.)  *Donovan*, however, did not address the issue before us—whether a particular exemption applies.

9

13(a)(3) exemption depends on its principal or primary activity." (DOL Wage and Hour Division Opinion Letter FLSA 2006-39 (DOL 2006-39); http://www.dol.gov/whd/opinion/FLSA/2006/2006_10_12_39_FLSA.htm [as of July 12, 2016].) "[I]nterpretations contained in formats such as opinion letters are 'entitled to respect.' " (*Christensen v. Harris County* (2000) 529 U.S. 576, 587.)

In summary, we conclude that eligibility for the amusement exemption turns on the nature of the employer's revenue producing activities, not on the nature of the work performed by the employee.

C. Nonsuit Motion

Appellants assert that one of the most important issues in this case in the trial court was whether all of the DAA's business operations, locations, buildings and departments constitute a single establishment because, if it is deemed to be a single establishment, it would satisfy the receipts test for the claimed exemption. Appellants argued in the trial court that they were entitled to a nonsuit because a required element of the amusement exemption is showing that the employment "plainly and unmistakably" falls within the letter and spirit of the exemption, and the DAA had failed to show that all of its operations constitute a single establishment. The trial court denied the motion, finding that the DAA had presented sufficient evidence from which the jury could find that the DAA operated a single establishment, and that the nature of the establishment was amusement or recreational.

The principal purpose in enacting the FLSA was to protect all covered workers from substandard wages and oppressive working hours. (*Barrentine v. Arkansas-Best Freight*

10

*System, Inc.* (1981) 450 U.S. 728, 739.)  A defendant bears the burden of proof of establishing the applicability of an FLSA exemption as an affirmative defense.  (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794-795 (*Ramirez*); accord, *Corning Glass Works v. Brennan* (1974) 417 U.S. 188, 196-197.)  Determining whether an exemption applies is a fact-specific inquiry.  (*Vinole v. Countrywide Home Loans, Inc.* (9th Cir. 2009) 571 F.3d 935, 945.)

As a general matter, FLSA exemptions " 'are to be narrowly construed against the employers seeking to assert them and their application [is] limited to those establishments plainly and unmistakably within their terms and spirit.' "  (*Arnold v. Ben Kanowsky, Inc.* (1960) 361 U.S. 388, 392; *Guerrero v. Superior Court* (2013) 213 Cal.App.4th 912, 941 (*Guerrero*).)  Appellants, however, seek to transform this policy statement into a new standard of proof.  Appellants' have cited no authority to support their contention, and we reject it.  The amusement exemption has two, and only two, elements: first, the business must qualify as an "amusement or recreational" establishment and, second, the establishment must satisfy either the duration test or the receipts test.  (29 U.S.C. § 213(a)(3); 29 C.F.R. § 779.385 (2015).)

The parties stipulated that, if the DAA were viewed in the aggregate as a single establishment, it would meet the receipts test of the amusement exemption.  Accordingly, we focus on the first element of the amusement exemption and examine whether the trial court properly denied nonsuit because the DAA presented evidence showing (1) that it is a single establishment, and (2) that the nature of its principal or primary activity is amusement or recreational.

11

A party is entitled to a nonsuit when, as a matter of law, the evidence presented by the party opposing the nonsuit is insufficient to allow a jury to find in the opposing party's favor. (See *Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1541.) In ruling on a nonsuit motion the trial court must interpret all of the evidence most favorably to the party opposing the nonsuit and most strongly against the party seeking the nonsuit, and must resolve all presumptions, inferences, conflicts, and doubts in favor of the party opposing the nonsuit. (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A.* (2013) 221 Cal.App.4th 867, 887.) We review the ruling on a nonsuit de novo, applying the same standard as the trial court. (*Saunders v. Taylor*, *supra*, 42 Cal.App.4th at pp. 1541-1542.) Thus, the issue before us is whether the evidence presented by the DAA, viewed favorably to its cause, was insufficient as a matter of law to show that the DAA operated a single establishment and that the nature of its principal or primary activity was amusement or recreational.

1. Single Establishment

Application of the amusement exemption depends on the general character of the establishment/employer. (29 C.F.R. § 779.302 (2015).) The term "establishment" refers to a " 'distinct physical place of business.' " (29 C.F.R. § 779.23 (2015).) An " 'enterprise' " may be "composed of a single establishment." (29 C.F.R. § 779.303 (2015).) "The term 'establishment,' however, is not synonymous with the words 'business' or 'enterprise' when those terms are used to describe multiunit operations. In such a multiunit operation some of the establishments may qualify for exemption, others may not." (*Ibid.*) Leased

departments in a departmentalized store are generally not considered to be separate

establishments for purposes of the exemptions.  (29 C.F.R. § 779.306 (2015).)

Both parties cite 29 C.F.R. § 779.305 (2015), which provides that an establishment

should be considered separate under the FLSA if "(a) It is physically separated from the

other activities; and (b) it is functionally operated as a separate unit having separate

records, and separate bookkeeping; and (c) there is no interchange of employees between

the units."[4]  The trial court instructed the jury with a modified version of this regulation.

29 C.F.R. § 779.305 (2015) describes a three-part test for distinguishing whether

"two or more physically separated portions of a business *though located on the same*

*premises* … may constitute more than one establishment for purposes of the exemptions."

(Italics added.)  However, we question whether this test applies where, as here, multiple

_____

[4]       29 C.F.R. § 779.305 (2015) provides: "Separate Establishments on the Same Premises. [¶] Although, as stated in the preceding section, two or more departments of a business may constitute a single establishment, two or more physically separated portions of a business though located on the same premises, and even under the same roof in some circumstances may constitute more than one establishment for purposes of exemptions. In order to effect such a result physical separation is a prerequisite.  In addition, the physically separated portions of the business also must be engaged in operations which are functionally separated from each other. . . . For retailing and other functionally unrelated activities performed on the same premises to be considered as performed in separate establishments, a distinct physical place of business engaged in each category of activities must be identifiable.  The retail portion of the business must be distinct and separate from and unrelated to that portion of the business devoted to other activities. . . . In other words, the retail portion of an establishment would be considered a separate establishment from the unrelated portion for the purpose of the exemption if (a) It is physically separated from the other activities; and (b) it is functionally operated as a separate unit having separate records, and separate bookkeeping; and (c) there is no interchange of employees between the units.  The requirement that there be no interchange of employees between the units does not mean that an employee of one unit may not occasionally, when circumstances require it, render some help in the other units or that one employee of one unit may not be transferred to work in the other unit.  The requirement has reference to the indiscriminate use of the employee in both units without regard to the segregated functions of such units."

13

premises are involved.  Significantly, the fact that multiple premises are involved is not fatal to a finding that the multiple premises constitute a single establishment.  (*Mitchell v T. F. Taylor Fertilizer Works, Inc.* (5th Cir. 1956) 233 F.2d 284, 285, 287 (*Mitchell*) [fertilizer dry mixing plant and office located on different premises constituted a single establishment for purposes of the retail or service establishments exemption]; *Doe v. Butler Amusements, Inc.* (N.D. Cal. 2014) 71 F.Supp.3d 1125, 1127, 1140-1141 (*Doe*) [cross-motions for summary judgment denied where carnival operating in more than one physical location could constitute a single establishment]; see also *Marshall*, *supra*, 562 F.2d at p. 1331 ("[[W]e think it appropriate to proceed beyond [29 C.F.R. § 779.305 (2015)] and look more broadly into 'the integrity of the economic… and functional separation between the business units.' "].)  As the *Mitchell* court noted, "the suggestion that the right to an exemption depends upon such factors as whether part of the business is separated by a partition, or is conducted in an adjoining building, or in a building across the street or five blocks away, does not recommend itself as a rational distinction; furthermore, it does not appear to have been the intent of Congress."  (*Mitchell*, *supra*, at pp. 285-286.)

The *Doe* court examined 29 C.F.R. § 1620.9 (2015), a regulation issued by the U.S. Equal Employment Opportunity Commission to interpret the Equal Pay Act (EPA), which is part of the FLSA.  (*Doe*, *supra*, 71 F.Supp.3d at p. 1134 & fn. 5.)  The definition of "establishment" is important to EPA analysis because the statute prohibits pay discrimination on the basis of sex within an "establishment."  (29 U.S.C. § 206(d)(1).)  29 C.F.R. § 1620.9 (2015) provides that "each physically separate place of business is ordinarily considered a separate establishment," but in unusual circumstances "two or more

14

portions of a business enterprise, even though located in a single physical place of business, may constitute more than one establishment" or "*two or more distinct physical portions of a business enterprise [could be treated] as a single establishment.* For example, a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions." (Italics added.) The *Doe* court concluded, and we agree, that this regulation offers guidance as to the meaning of "establishment" in the context of overtime and minimum wage claims. (*Doe*, *supra*, 71 F.Supp.3d at p. 1134 & fn. 5.)

Accordingly, reliance by the parties and the court on the three-part test of 29 C.F.R. § 779.305 may be misplaced. Appellants, however, do not claim error on this ground. Thus, we examine the trial court's ruling on the nonsuit motion utilizing the three-part conjunctive test of 29 C.F.R. § 779.305 (2015) to determine whether the DAA presented evidence showing that it operates as a single establishment. Under this test, evidence showing physical and functional separation, and no interchange of employees is sufficient to show that an establishment should be considered separate, rather than a single establishment.

The Horsepark is physically separated from the Fairgrounds. Nonetheless, the DAA presented evidence showing that its Board of Directors oversees the Fairgrounds, the Horsepark and the Recreation Center. The day-to-day operations of the Recreation Center are performed by private companies that run their respective businesses under written leases and operating agreements with the DAA, but the DAA, as the landlord, handles

major issues such as plumbing or electrical problems. The chief financial officer for the DAA testified that the DAA has an organizational chart. Different areas of responsibility are divided into departments, with different department numbers. All departments are "very tightly linked together" and they share employees and resources. A single set of books exists for all of the departments and the departments cannot function separately. The DAA has a single operating bank account for all departments. The Horsepark does not have a separate bank account or accounts payable department.

The department heads for all departments report to the executive management of the DAA. The departments do not have separate executive officers or boards of directors. Additionally, the DAA's accounting staff is used interchangeably as needed at the Horsepark to track accounts receivables, and the DAA's employees perform necessary maintenance, recycling, marketing, security and janitorial work for all departments. The Horsepark and the DAA use the same payroll and human resources departments.

This constitutes substantial evidence showing that the two separate properties qualify as a single establishment, since they are not functionally operated as separate departments, do not have separate records and separate bookkeeping, and there is an interchange of employees between them. Although appellants may have presented conflicting evidence on this element, conflicting evidence is disregarded when evaluating a motion for nonsuit. (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 27-28.)

16

2. Amusement or Recreational Character of Establishment

Appellants next contend that the trial court erred in denying their motion for nonsuit because there was no substantial evidence to support a finding that the DAA derived a majority of its income from amusement or recreation. As appellants note, in determining whether the character of an establishment is primarily amusement or recreational, some courts have utilized an income test to determine the principal activity of the enterprise, under the rationale that the major income source of a business will be the principal activity of the business. (See e.g., *Texas City*, *supra*, 492 F.2d at pp. 1119-1120 [the major income source of the business will be its principal activity].) In contrast, another court declined to require that an establishment derive a certain percentage of revenue from strictly recreational activities in order to be considered recreational. (*Chessin*, *supra*, 184 F.3d at p. 1194.) Instead, the *Chessin* court examined the totality of the circumstances, "including but not limited to the establishment's primary purpose; activities and services, such as restaurants and shops, that it offers incidental to its recreational facilities; its relationship to land set aside for recreational use; and its revenue sources." (*Ibid.*)

In DOL 2006-39, the DOL stated "[w]hether or not an establishment has an 'amusement or recreational' character for purposes of the [amusement] exemption depends on its principal or primary activity." After so holding, the DOL noted that, based on the information provided, the principal activity of the establishment (vessels providing overnight vacation cruises) appeared to be selling recreational activities, but that other factors "may weigh" against a finding that the establishment had an amusement or recreational character, noting "if the majority of [the establishment's] income is derived

17

from food, drink, lodging, concessions, and gifts, rather than from the premium portion of ticket sales paid for the nature-related and sight-related aspects of the excursion and entertainment, that would weigh against [the establishment] having an amusement or recreational character." (DOL 2006-39.) Thus, the DOL appears to have adopted a totality of the circumstances test to determine the amusement or recreational nature of an establishment, since it did not require that the establishment derive a certain percentage of revenue from activities that were strictly amusement or recreational, but rather, considered the source of the establishment's income to be one factor in the overall analysis. We agree with this conclusion. Accordingly, in evaluating whether the trial court properly denied nonsuit on the ground that the DAA established that the nature of its establishment is amusement or recreational, we look to the totality of the circumstances, including the portion of the DAA's revenue derived from amusement or recreational activities.

The amusement exemption provides that the establishment must be for "amusement" or "recreation[]," but does not define these terms. (29 U.S.C. § 213(a)(3).) A federal regulation provides a somewhat circular definition of amusement or recreational establishments as "establishments frequented by the public for its amusement or recreation." (29 C.F.R. § 779.385 (2015).) According to the Oxford English Dictionary, "amusement" means "[r]ecreation, relaxation, the pleasurable action upon the mind of anything light and cheerful" and defines "recreation" as "[t]he action or fact of refreshing or entertaining oneself through a pleasurable or interesting pastime, amusement, activity." (Oxford English Dict. Online (2016) < http://www.oed.com> [as of May 27, 2016].) At least one federal circuit court found the phrase "[r]ecreational establishment" to be

18

ambiguous because the words used in the statute do not plainly convey where the boundary for the exemption lies. (*Chao v. Double JJ Resort Ranch* (6th Cir. 2004) 375 F.3d 393, 396-397.) We agree with this assessment.

Because of this ambiguity, in determining whether the exception applies, we may properly consider any legislative history. The Sixth Circuit noted that "[t]he purpose of the seasonal amusement or recreational establishment exemption was not clearly spelled out in the legislative history of either the 1961 or 1966 amendments. However, there is some useful legislative history discussing a proposed 1965 amendment to the FLSA. The House Committee Report stated that the amusement and recreational establishment exemption would cover 'such seasonal recreational or amusement activities as amusement parks, carnivals, circuses, sport events, parimutuel racing, sport boating or fishing, or other similar or related activities . . . .' [Citation.] Although the proposed amendment was not passed, the legislative history is relevant because the following year Congress enacted a similar amendment including the amusement and recreational exemption." (*Brock v. Louvers and Dampers, Inc.*, *supra*, 817 F.2d at p. 1258.)

Another court noted that while the legislative history is "skimpy," it "suggests that the exemption does not cover establishments whose sole or primary activity is selling goods." (*Texas City*, *supra*, 492 F.2d at p. 1118.) The *Texas City* court noted the Tenth Circuit's statement that the purpose of the amusement exemption is " ' to allow recreational facilities to employ young people on a seasonal basis and not have to pay the relatively high minimum wages required' " by the FLSA. (*Id.* at fn. 6, citing *Brennan v. Yellowstone Park Lines* (10th Cir. 1973) 478 F.2d 285, 288.) The *Texas City* court commented that

19

"[w]hile that appears to be a logical theory, we can find nothing in the legislative history to confirm it. The legislative history simply does not directly address the purpose of the amusement-recreation exemption." (*Texas City*, *supra*, at p. 1118.)

With this background, we note that the recreational nature of the DAA is established by statute. The statutory purpose of the DAA is to hold "fairs, expositions and exhibitions for the purpose of exhibiting all of the industries, and industrial enterprises, resources and products of every kind or nature of the state with a view toward improving, exploiting, encouraging and stimulating them," and to "construct[], maintain[] and operate[] recreational and cultural facilities of general public interest." (Food & Agric. Code, § 3951.) The DAA is statutorily empowered to lease its property. (Food & Agric. Code, § 4051, subd. 12.) Additionally, other courts have concluded that fairgrounds are recreational in nature. (*Hamilton v. Tulsa County Public Facilities Authority*, *supra*, 85 F.3d at p. 496, 497 [holding public trust that managed fairgrounds to be exempt from the overtime provisions of the FLSA under the amusement or recreational establishment exemption exception]; *Gibbs v. Montgomery County Agricultural. Society* (S.D. Ohio 2001) 140 F.Supp.2d 835, 844 [holding the amusement exemption applied because "the uncontroverted evidence establishes that the Defendant's principal 'activities are the management of the Montgomery County Fairgrounds—including leasing it for various recreational and other activities. . . .' "]; *Chaney v. Clark County Agricultural. Society* (Ct. App. Ohio 1993) 90 Ohio App. 3d 421, 423, 425-426 [noting that the United States Department of Labor, Wage and Hour handbook provides the activities of the usual " ' "state or county fair are analogous to those of an amusement park, carnival, or

20

circus . . . and . . . thus may qualify for the [29 U.S.C.] section 213(a)(3) exemption if the [operational] tests are met." ' "].)

The evidence that the DAA presented shows that the primary nature of its establishment is amusement and recreational. The mission statement of the DAA is "[t]o manage and promote a world class, multi-use, public assembly facility with an emphasis on agriculture, education, entertainment and recreation in a fiscally sound and environmentally conscientious manner for the benefit of all." The DAA produces numerous events each year, such as the Del Mar National Horse Show, the San Diego County Fair, Professional Bull Riding circuit, the annual Scream Zone and, previously, the Holiday of Lights. The DAA also utilizes its premises to host approximately 300 interim events per year, produced by organizations that rent its facilities, including events such as home and garden shows, bridal bazaars, dog shows, cat shows and private events. The trial court could have rationally concluded that the primary character of these interim events is amusement or recreational.

Appellants represent that the DAA derives about 50 percent of its total income from the fair and one percent from its lease to the Del Mar Thoroughbred Club. They claim that the jury could infer that about 49 percent of the DAA's total income came from interim events that are not amusement or recreational in character. However, in light of our conclusion that the trial court could have rationally found that the primary character of the interim events is amusement or recreational, appellants' argument works against them. Despite the lack of authority regarding the meaning of "amusement or recreational," this

21

evidence is sufficient to show that the primary nature of the DAA is to provide amusement or recreation.

In summary, the trial court properly denied appellants' nonsuit motion because the DAA presented sufficient evidence that it is a single establishment that provides amusement or recreation.[5]

D. Jury Instructions

1. General Legal Principles

A party is entitled to request that the jury be correctly instructed on any of the party's theories of the case that is supported by substantial evidence. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 (*Soule*).) An erroneous refusal to instruct the jury is reversible if it is probable that the error prejudicially affected the verdict. (*Id.* at p. 580.) We independently review contentions that the court erred in instructing the jury. (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 82.) In doing so, and in evaluating any prejudicial impact of the allegedly erroneous instruction, we view the evidence in the light most favorable to the losing party because "we must assume the jury might have believed the evidence upon which the proposed instruction was predicated and might have rendered a verdict in favor of the losing party had a proper instruction been given." (*Bourgi v. West Covina Motors, Inc.* (2008) 166 Cal.App.4th 1649, 1664.) When

---

[5]     Appellants have not challenged the sufficiency of the evidence supporting the jury's fact-specific findings that the DAA operates a single establishment, that the nature of that establishment is amusement or recreational, and that the establishment satisfies the receipts test. (*Vinole v. Countrywide Home Loans, Inc.*, *supra*, 571 F.3d at p. 945.) We deem these arguments forfeited. (*Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1282.)

deciding whether an instructional error was prejudicial, we must consider "insofar as relevant, '(1) the degree of conflict in the evidence on critical issues [citations]; (2) whether respondent's argument to the jury may have contributed to the instruction's misleading effect [citation]; (3) whether the jury requested a rereading of the erroneous instruction [citation] or of related evidence [citation]; (4) the closeness of the jury's verdict [citation]; and (5) the effect of other instructions in remedying the error [citations].' " (*Soule*, *supra*, 8 Cal.4th at pp. 570-571.)

2. Analysis

Appellants claim that the trial court erred in refusing nine of their proposed special instructions and in giving one of the DAA's proposed special instructions. We address each instruction.

a. Appellants' Proposed Special Jury Instruction Number 2

The proposed instruction provided: "An employee cannot give up his or her overtime compensation even if he or she agrees to do so, or even if he or she volunteers to work overtime hours. An employer must pay overtime compensation to an employee even if the employee[] volunteered and/or agreed to work more than forty (40) hours without receiving overtime compensation."

Appellants contend that the trial court erred in refusing to give this instruction because it is an accurate statement of the law. Assuming, without deciding, that the instruction accurately states the law, appellants have not explained how the instruction was relevant to deciding the merits of the DAA's affirmative defense, which was the sole issue before the jury in the first phase of this bifurcated trial. As noted, to establish the

23

amusement or recreational exemption, the DAA was required to prove that it is a single establishment, the nature of the establishment is amusement or recreational and that it satisfies the duration or receipts test. (See *ante*, pt.I.C.) The trial court properly rejected the proposed instruction because it was not relevant to the issues before the jury during this phase of the trial.

b. Appellants' Proposed Special Jury Instructions Numbers 3, 7 and 15

Proposed instruction number 3 provided: "In order to find that an employee is 'exempt' from the benefits of the overtime law, you must find that the employee's employment is *plainly and unmistakably within the terms and spirit* of the particular exemption claimed by the employer. The exemption claimed by the . . . DAA in this case was designed to facilitate youth summer employment." (Italics added.)

The trial court refused the instruction, stating that the concept was "nebulous . . . this area of the law is slippery enough. We don't have to add spirit and terms. . . ." Appellants assert that the failure to provide this instruction denied them the opportunity to place their full case before the jury and constituted a miscarriage of justice. We disagree.

The italicized language in the proposed instruction originates from a United States Supreme Court case and is often cited. (*Arnold v. Ben Kanowsky, Inc.*, *supra*, 361 U.S. at p. 392; e.g., *Guerrero*, *supra*, 213 Cal.App.4th at p. 941.) The snippet in the instruction stating that the exemption is "designed to facilitate youth summer employment" is taken from a federal circuit opinion addressing the legislative history of the exemption. (*Brennan v. Yellowstone Park Lines*, *supra*, 478 F.2d at p. 288.)

24

The mere fact that language in a proposed jury instruction comes from case authority does not qualify it as a proper instruction. "The admonition has been frequently stated that it is dangerous to frame an instruction upon isolated extracts from the opinions of the court." (*Francis v. City & County of San Francisco* (1955) 44 Cal.2d 335, 341.) As another court noted, judicial opinions are not written as jury instructions, are notoriously unreliable as such, and may have a confusing effect upon a jury. (*Merritt v. Reserve Ins. Co.* (1973) 34 Cal.App.3d 858, 876, fn. 5.) While the first sentence of the proposed instruction might be an accurate statement of law that appellants could argue to the jury, it is not for the court to make argument to the jury in the form of an instruction. Further, the second sentence, stating that the exemption is "designed to facilitate youth summer employment" is arguably misleading in that it suggests that the exemption properly applies only to such an activity. We agree with the trial court's conclusion that the proposed instruction was inappropriate. Thus, the trial court did not err in refusing appellants' proposed instruction number 3.

Proposed instruction number 7 stated: "In considering whether an establishment qualifies as an amusement establishment and/or a recreational establishment, you are to construe the terms 'amusement' and 'recreation' narrowly against the . . . DAA and in favor of the Plaintiffs." While it is undisputed that exemptions "are to be narrowly construed against the employers seeking to assert them" (*Arnold v. Ben Kanowsky, Inc.*, *supra*, 361 U.S. at p. 392; *Guerrero*, *supra*, 213 Cal.App.4th at p. 941), it does not follow that the terms "amusement" and "recreation" should be construed narrowly against the employer. The proposed instruction is improperly argumentative.

25

Proposed instruction number 15 provided: "In order for an establishment to qualify as an amusement or recreation establishment, the majority of the establishment's income must be generated by amusement or recreational activities, excluding revenues from *food and drink sales, concessions, and gifts*." (Italics added.)

Appellants assert that the proposed instruction is an accurate, nonargumentative statement of the law derived from DOL 2006-39, as cited in *Mann v. Falk* (11th Cir. 2013) 523 Fed.Appx. 549, 552-553 (*Mann*). They contend that the evidence presented at trial revealed that the fair generates 50 percent of the DAA's gross revenue, but that only ten to thirteen percent of that amount is from the amusement park and rides, with the remainder of the revenue coming from food and beverage sales, parking, commercial space rentals, corporate sponsorships and merchandising. Appellants argue that this latter income does not qualify as amusement or recreational and that the failure to give the proposed instruction likely impacted the verdict.

In DOL 2006-39, the DOL issued an opinion addressing whether employees of a client who provided overnight vacation excursions of three- to ten-days duration on small vessels were exempt as amusement or recreational in nature under the FLSA. The DOL found, based on the information provided, that it appeared "your client's vessels have an 'amusement or recreational' character" since the "primary activities of the vessels include sightseeing, exploring sights and nature, nature-related and sight-related discussions and lectures, group activities and programs, meals, and other similar activities." (DOL 2006-39.) Citing *Texas City*, *supra*, 492 F.2d at pp. 1119-1120, the DOL then cautioned, that the establishment's primary source of income is examined "in determining the nature of the

26

establishment. Thus, if the majority of your client's income is derived from food, drink, lodging, concessions, and gifts, rather than from the premium portion of ticket sales paid for the nature-related and sight-related aspects of the excursion and entertainment, that would weigh against your client's vessels having an amusement or recreational character." (DOL 2006-39, *supra*.)

While the *Texas City* court concluded that the principal activity of the establishment was determinative as to its eligibility of an exemption, nowhere in the opinion did the *Texas City* court discuss income derived from food, drink, lodging, concessions and gifts. (*Texas City*, *supra*, 492 F.2d at p. 1119.) The *Mann* court similarly cited "food, drink, lodging, concessions, and gifts" from DOL 2006-39 for the proposition that the source of the income affected whether the exemption applied, but there is no information in *Mann* concerning where this phrase originated. (*Ibid.*) DOL 2006-39 shows that the phrase originates from the DOL's Field Operations Handbook in a section specifically addressing "riverboat cruises." (DOL 2006-39, citing DOL Field Operations Handbook § 25j17 (May 27, 1994), located at < http://www.dol.gov/whd/FOH/FOH_Ch25.pdf> [as of July 12, 2016].)

We conclude that the trial court did not err in refusing to give proposed instruction number 15, since there is no authority indicating that it is a correct statement of the law when applied to an entity such as the DAA. Additionally, as noted above, the source of income is but one factor to consider in determining whether an establishment is primarily

27

amusement or recreational in character.  (*Ante*, p. I.C.2.)  The source of the DAA's income was an evidentiary issue more appropriately argued by the parties.[6]

c. Appellants' Proposed Special Jury Instruction Number 4

This instruction stated:  "In this case, the . . . DAA contends that the Plaintiffs' employment is 'exempt' because the . . . DAA assertedly qualifies as an establishment which is an amusement or recreational establishment.  Plaintiffs dispute this.  Plaintiffs also contend that the . . . DAA actually constitutes multiple establishments for purposes of the exemption law, and Plaintiffs dispute that these assertedly multiple establishments qualify for the claimed exemption."

Appellants' argue that a jury instruction may properly contain a statement of a party's contentions and that the trial court erred when it refused the instruction.  To support their argument, appellants cited *Tesoro Del Valle Master Homeowners Assn. v. Griffin* (2011) 200 Cal.App.4th 619, in which the appellate court noted:  "As part of the jury instructions, the trial court informed the jury about the nature of the dispute and the parties' contentions . . . ."  (*Id.* at p. 628.)  Nothing in the opinion addresses the propriety of this practice and " '[i]t is axiomatic that cases are not authority for propositions not considered.' "  (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388.)

Assuming, without deciding, that the trial court erred in refusing to give the proposed instruction, appellants have not shown that they were prejudiced, i.e., they have

---

6    The record does not show that appellants ever sought to modify its proposed instruction number 15 to eliminate this phrase, but retain the concept that the jury could appropriately examine the source of the establishment's revenue as a factor in determining whether the principal activity of the establishment was amusement or recreational.

not shown that it is probable that the assumed error prejudicially affected the verdict. (*Soule*, *supra*, 8 Cal.4th at p. 580.) "Actual prejudice must be assessed in the context of the individual trial record. . . . Thus, when deciding whether an error of instructional omission was prejudicial, the court must also evaluate (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Id.* at pp. 580-581, fn. omitted.) Appellants have provided no argument concerning these factors and have not convinced us that failure to give the proposed instruction prejudiced them.

d. Appellants' Proposed Special Jury Instruction Number 5

Proposed jury instruction number 5 stated: "The . . . DAA has the burden to prove all facts necessary to establish its claim of exemption."

Appellants' assert that the proposed instruction is an accurate, nonargumentative statement of the law and, taken together with proposed instruction number 4, would have instructed the jury that the DAA had the burden of proof as to whether all of the DAA's business operations, locations, buildings and departments constitute a single establishment (the "identification-of-establishment" question). Appellants note that the identification-of-establishment question is one of three jury interrogatories presented in the verdict form and claim that they were entitled to an accurate instruction as to the burden of proof. The DAA asserts that the proposed instruction was unnecessary because other jury instructions advised the jury that the DAA had the burden of proof. We agree with the DAA.

A judgment may not be reversed "based upon the failure to give particular instructions if the point is covered adequately by instructions which were given." (*Mathis*

29

*v. Morrissey* (1992) 11 Cal.App.4th 332, 343.)  The court instructed that the DAA claimed it was exempt from paying overtime and that to prevail, the DAA "must prove" that "[t]he nature of the establishment for which Plaintiffs worked, is amusement or recreational" and that the DAA satisfied the receipts test.  The court also instructed the jury on the definition of "establishment" and the phrase "amusement or recreational."  Taken together, these instructions adequately conveyed to the jury that the DAA had the burden of proof on all elements of the amusement exemption.

Even assuming that the trial court erred in refusing to give the proposed instruction, appellants have not shown that a miscarriage of justice resulted from the assumed error such that there is a reasonable probability that in the absence of the error, they would have obtained a more favorable result.  (*Soule*, *supra*, 8 Cal.4th at p. 580.)  During the course of the trial, the court commented to the jury that the DAA bore the burden of proof.  During closing argument, the DAA stated that it carried the burden of proof in this matter.  Appellants' counsel commented at the beginning of his closing argument that the DAA had "the burden of proof on every item in this case."  When reviewing the verdict form with the jury, appellants' counsel again reminded the jury that the DAA had the burden of proof on every issue, arguing that the DAA had not met its burden of proving that all of its operations and departments constituted a single establishment.  On this record, any assumed error in not given the proposed instruction was not prejudicial.

e. Appellants' Proposed Special Jury Instruction Number 8

Proposed jury instruction number 8 stated: "In considering whether an employee's employment is by an establishment which qualifies as an amusement establishment and/or

30

a recreational establishment, you may consider whether the work actually performed by the particular employee is 'amusement' and/or 'recreational' in nature."

As discussed above, we have concluded that eligibility for the amusement exemption turns on the nature of the employer's activities, not on the type of work performed by the individual employees. (*Ante*, pt. I.B.) Accordingly, the trial court properly rejected this instruction because it is not a correct statement of law.

f. Appellants' Proposed Special Jury Instruction Number 9

This instruction stated: "In order to meet the requirement of actual employment by the establishment claimed to be exempt, an employee, whether performing his [or] her duties inside or outside the establishment, must be employed by his or her employer in the work of the exempt establishment itself in activities within the scope of its exempt business."

Appellants' assert that this proposed instruction is a nearly verbatim quotation from 29 C.F.R. § 779.308 (2015).[7] Appellants maintain that an employee cannot be exempt if he or she is not actually employed by an exempt establishment and that the trial court erred in refusing the proposed instruction, since it prescribes the facts that must be proven to "meet the requirement of actual employment by the establishment." As we concluded above, application of the amusement exemption turns on the nature of the employer's

_____

[7] 29 C.F.R. § 779.308 (2015) provides: "Employed within scope of exempt business. [¶] In order to meet the requirement of actual employment 'by' the establishment, an employee, whether performing his duties inside or outside the establishment, must be employed by his employer in the work of the exempt establishment itself in activities within the scope of its exempt business." (Citations omitted.)

31

business, not on the nature of the employee's work. (*Ante*, pt. I.B.) Appellants' reliance on 29 C.F.R. § 779.308 is misplaced; this regulation is relevant to determining whether an employee is "employed by" an exempt establishment. It does not address an employer's entitlement to claim a particular exemption.

g. Appellants' Proposed Special Jury Instruction Number 14

Proposed instruction number 14 stated: "An employee may be overtime-eligible in one week, but not overtime-eligible in the next week. If an employee does some work for an exempt establishment, and some work for a non-exempt establishment, during the same workweek, that employee must be treated as overtime-eligible for that week. The burden to separate between exempt and non-exempt work as between particular workweeks for a given employee, or as between different groups of employees, is imposed by law upon the employer."

Appellants' state that proposed instruction number 14 is drawn from 29 C.F.R.

§ 776.4. (2015)[8]  They claim that the trial court erred in refusing to give the instruction because the evidence presented at trial supported a finding that they performed substantial work that was not within the scope of the amusement exemption.  Appellants further maintain that the commingling of non-exempt work with exempt work would be fatal to any claim of exemption for the workweek in which the commingling occurred.  We disagree.

---

[8]  29 C.F.R § 776.4 (2015) provides: "(a) The workweek is to be taken as the standard in determining the applicability of the Act. [Footnote omitted.] Thus, if in any workweek an employee is engaged in both covered and noncovered work he is entitled to both the wage and hours benefits of the Act for all the time worked in that week, unless exempted therefrom by some specific provision of the Act. The proportion of his time spent by the employee in each type of work is not material. If he spends any part of the workweek in covered work he will be considered on exactly the same basis as if he had engaged exclusively in such work for the entire period. Accordingly, the total number of hours which he works during the workweek at both types of work must be compensated for in accordance with the minimum wage and overtime pay provisions of the Act.

"(b) It is thus recognized that an employee may be subject to the Act in one workweek and not in the next. It is likewise true that some employees of an employer may be subject to the Act and others not. But the burden of effecting segregation between covered and noncovered work as between particular workweeks for a given employee or as between different groups of employees is upon the employer. Where covered work is being regularly or recurrently performed by his employees, and the employer seeks to segregate such work and thereby relieve himself of his obligations under sections 6 and 7 with respect to particular employees in particular workweeks, he should be prepared to show, and to demonstrate from his records, that such employees in those workweeks did not engage in any activities in interstate or foreign commerce or in the production of goods for such commerce, which would necessarily include a showing that such employees did not handle or work on goods or materials shipped in commerce or used in production of goods for commerce, or engage in any other work closely related and directly essential to production of goods for commerce.  [Footnote omitted.]  The Division's experience has indicated that much so-called 'segregation' does not satisfy these tests and that many so-called 'segregated' employees are in fact engaged in commerce or in the production of goods for commerce."

29 C.F.R. § 776.4 (2015) is contained in part 776, entitled an "interpretative bulletin on the general coverage of the wage and hours provisions of the" FLSA. (See 29 C.F.R. subpt. B, Ch. V, subch. B, pt. 776.) As the title explains, the regulations in part 776 pertain to determining coverage under the FLSA. The FLSA defines "covered" employees as those who are " 'engaged in commerce or in the production of goods for commerce.' " (29 C.F.R. § 776.0 (2015).) These regulations do not address whether particular employees, who come under the purview of the FLSA, are subject to an exemption. Thus, the trial court did not err in refusing to give the instruction because it was not relevant to the issues before the jury.

h. Respondent's Special Instruction No. 3

Appellants claim that the trial court erred in instructing the jury with respondent's Special Instruction No. 3, and that the error was prejudicial. This instruction stated: "In situations involving an Establishment with more than one department, those departments can still collectively constitute a single 'Establishment.' More than one department collectively constitutes a single Establishment unless you find all of the following: [¶] 1. The department is physically separated from the other activities of the Establishment; and [¶] 2. The department is functionally operated separately from the Establishment; and [¶] 3. The department has separate records and separate bookkeeping from the Establishment; and [¶] 4. There is no interchange of employees between the department and the Establishment. [¶] In evaluating whether more than one department constitutes a single Establishment, the critical factors are economic, physical, and functional separation between the departments. No single factor controls, but even when an Establishment has

34

many departments, so long as they are operated as integral parts of the same Establishment, they constitute one single Establishment."

Appellants concede that this instruction is drawn from 29 C.F.R. § 779.305 (2015), but assert that the instruction is an incomplete statement of the law because it omits important concepts contained within the regulation. Specifically, appellants note that the regulation provides that, in order to support a finding that an employer operates only one establishment, the "interchange" of its employees among its departments must constitute, ". . . *indiscriminate* use of the employee in both units *without regard* to the segregated functions of such units." (29 C.F.R., § 779.305 (2015), italics added; see fn. 4, *ante*.) Without this limitation, appellants contend, the instruction was inaccurate and misleading. Assuming, without deciding, that the omission of the word "indiscriminate" rendered the instruction inaccurate and misleading, appellants have failed to address the *Soule* factors, including the state of the evidence, the effect of other instructions, the effect of counsel's arguments, and whether the jury was misled. (*Soule*, *supra*, 8 Cal.4th at pp. 580-581.) Thus, they have failed to convince us that the assumed error prejudicially affected the verdict.

E. Verdict Form

1. Background

Appellants submitted a proposed special verdict form that contained eight separate questions. The questions asked the jury to determine whether the DAA had proven that its employees were ineligible to receive overtime compensation based on where they worked (interim events, the Horsepark, the main parcel, recreation center or satellite wagering

35

premises) and whether the fair was in session or was not in session.  The special verdict form proposed by the DAA contained five questions, some with subparts.  The trial court rejected both proposed verdict forms.  Instead, the trial court presented the parties with a special verdict form that it had drafted.  The three question special verdict form prepared by the court asked: "1. How many establishments did [the DAA] operate?  One [or] Two or more; 2. For each establishment in your answer to question 1 for which Plaintiffs worked, was the nature of the establishment amusement or recreational?  Yes [or] No"; and "3. For each establishment in your answer to question 1 for which Plaintiffs worked, was the establishment's average receipts for any six months of such year no more than 33 1/3 per centum of the establishment's average receipts for the other six months of such year?  Yes [or] No."

The court discussed each question on its proposed verdict form with counsel. Appellants' counsel expressed no objection to question one, stating that it was "a good way to start."  Appellants' counsel had "no problem" with question two.  After discussing question three with the court, appellants' counsel stated that he had "no problem" with question three.  When asked whether he had "[a]ny particular objections to the proposed verdict form," appellants' counsel responded "no."

During trial, the court commented that it would ultimately decide whether the amusement exemption applied, based on the jury's predicate findings.  After the jury rendered its verdict, appellants argued that the judgment should identify each plaintiff in the collective action.  Appellants further noted that by agreeing to the form of the judgment, they were not waiving their contention that "there may be one or more issues"

36

that had not been presented to the jury, including whether an employer may utilize the amusement exemption "while loaning out employees to non-exempt outside event promoters, and charging the non-exempt outside event promoters for the employees' labor, plus a markup." The DAA responded, stating that it was not aware of any authority requiring that all plaintiffs in a representative action be included in the judgment. The DAA also noted that appellants had argued to the jury that loaning employees to vendors did not fall within the amusement exemption, and that the jury necessarily rejected the argument. The DAA suggested that the appropriate way to address this issue would be by filing a motion for relief from the verdict and judgment. The trial court later entered a judgment in which the court noted that it had read and considered the parties' respective posttrial briefs. However, the judgment did not explicitly state that, based on the jury's findings, the court had concluded that the amusement exemption applied to the DAA, and appellants did not bring the omission to the trial court's attention.

2. Analysis

Appellants contend that the verdict form was fatally defective because it did not allow the jury to resolve every controverted issue. Specifically, they claim that the verdict form failed to ask the jury whether the majority of the DAA's revenues are derived from activities that are amusement or recreational in nature, so as to satisfy the "principal activity" test. Assuming that the principal activity test was satisfied, they contend that the jury should have been asked whether the exemption applies when: (1) the DAA assigns its employees to perform work to support interim events presented by outside promoters in connection with non-amusement, non-recreational events, and charges the outside

promoters for respondent's employees' labor (plus a markup); (2) appellants perform work that was neither amusement nor recreational in nature; and (3) appellants perform work that is not within the scope of the DAA's assertedly exempt business.

The DAA contends that appellants waived any objection to the verdict form by failing to object in the trial court. Appellants dispute this contention, stating that while they found no fault in the three jury interrogatories, they never acquiesced in the trial court's refusal to present to the jury the question whether the claimed exemption could be properly applied to appellants. We agree with the DAA.

An objection to the form of questions in a special verdict must be raised in the trial court or the issue is waived on appeal. (*Orient Handel v. United States Fid. & Guar. Co.* (1987) 192 Cal.App.3d 684, 700.) After the trial court rejected their proposed verdict form, appellants did not attempt to revise their verdict form, nor did they ask the court to revise its proposed verdict form. When specifically asked whether he had "[a]ny particular objections to the proposed verdict form," appellants' counsel responded "No," and did not voice any concerns that the court's proposed verdict form, while not objectionable, was incomplete. Moreover, after the jury rendered its verdict, appellants did not raise their concern with the trial court, nor did they ask to have the jury correct or clarify the verdict before the court discharged the jury. (Code Civ. Proc., § 619 ["When the verdict is announced, if it is informal or insufficient, in not covering the issue submitted, it may be corrected by the jury under the advice of the court, or the jury may be again sent out."].) Finally, appellants did not preserve the issue by raising it in a motion for new trial. (*All-*

*West Design, Inc. v. Boozer* (1986) 183 Cal.App.3d 1212, 1220 [challenge to use of verdict forms may be raised for first time in motion for new trial].)

On this record, we conclude that appellants forfeited any claimed defect in the special verdict form. To the extent that appellants claim that, after the jury rendered its verdict, the trial court failed to determine the ultimate question whether the amusement exemption applied, this issue was also forfeited. The record does not show that appellants raised the issue after the jury rendered its verdict. In any event, under the doctrine of implied findings, we presume that the trial court made all factual findings necessary to support the judgment in favor of the DAA. (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1271-1272.)

F. Exclusion of Class Members

1. Background

During trial, appellants' counsel noted that his witnesses were in the hallway and stated, "[b]ecause they filed joinders in a collective action, I believe they're parties for purposes of [Evidence Code] section 777," indicating that the witness/parties should be permitted to remain in the courtroom during trial proceedings. Counsel for the DAA objected, stating "they can have a representative, but I don't think the witnesses should be here watching other witnesses." The trial court sustained the DAA's objection. Appellants' counsel did not argue the matter further and indicated that his assistant would make sure people were "lined up" outside the courtroom.

2. Analysis

Evidence Code section 777 states that "the court may exclude from the courtroom any witness not at the time under examination so that such witness cannot hear the testimony of other witnesses," but also provides that "[a] party to the action cannot be excluded under this section." "The purpose of [a witness exclusion] order is to prevent tailored testimony and aid in the detection of less than candid testimony." (*People v. Valdez* (1986) 177 Cal.App.3d 680, 687.) We review a ruling on a motion to exclude witnesses for abuse of discretion. (*People v. Griffin* (2004) 33 Cal.4th 536, 574.)

Appellants assert that the trial court erred because they are parties in interest that may not be excluded from the courtroom under Evidence Code section 777. The DAA contends that appellants forfeited this issue by not raising it below, noting that the actual issue before the trial court was whether appellants' party witnesses could, for the first time beginning on the third day of trial, be present in the courtroom while appellants' other witnesses testified.

The parties have not cited, and we have not found, any case law addressing the application of Evidence Code section 777 to collective actions under the FLSA. We note, however, that even a party does not have an absolute right to attend trial. (*Province v. Center for Women's Health & Family Birth* (1993) 20 Cal.App.4th 1673, 1686.) By sustaining the DAA's objection, the trial court agreed that class members who were witnesses should not be listening to the testimony of other witnesses. Appellants' counsel never asked the trial court to rule on whether any of the 177 class members, who were not designated as witnesses, could be excluded from the courtroom and we decline to infer such a ruling on this limited record. Additionally, appellants' counsel never pursued the

40

matter, by, for example, asking to take witnesses out of order to prevent the exclusion of a party witness from the courtroom or making an offer of proof that counsel required the presence of the excluded party witnesses at counsel table to assist in the prosecution of the case.

On this record, we conclude that the trial court did not err by excluding party witnesses from the courtroom. Additionally, a judgment may not be reversed on appeal unless, after an examination of the entire cause, including the evidence, it appears that the error caused a miscarriage of justice. (Cal. Const., art. VI, § 13.) Even assuming that the trial court erred, appellants have not shown how excluding party witnesses from the courtroom during the testimony of other party witnesses resulted in any prejudice.

## II. *Demurrer to Section 510 Claim*

### A. Standard of Review

We review an order sustaining a demurrer without leave to amend de novo (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415), assuming the truth of all properly pleaded facts as well as facts inferred from the pleadings, and giving the complaint a reasonable interpretation by reading it as a whole and its parts in context. (*Palacin v. Allstate Ins. Co.* (2004) 119 Cal.App.4th 855, 861.) A complaint will be construed "liberally . . . with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) "[I]f there is a reasonable possibility the defect in the complaint could be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith* (1998) 68 Cal.App.4th 445, 459 (*City of Atascadero*).) A trial court may abuse its discretion in sustaining a demurrer

41

without leave to amend even though the plaintiff never requested leave to amend. (Code Civ. Proc., § 472c, subd. (a); *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746 ["The issue of leave to amend is always open on appeal, even if not raised by the plaintiff."].) The plaintiff has the burden of demonstrating how the complaint can be amended to state a valid cause of action. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

"To the extent issues of statutory interpretation are raised, we apply the rules of statutory construction and exercise our independent judgment as to whether the complaint states a cause of action. [Citation.] Our first task in construing a statute is to ascertain the Legislature's intent in order to carry out the purpose of the law. If the statutory language is clear and unambiguous, no judicial construction is required. If the statute is ambiguous, the words must be construed in context in light of the statutory purpose." (*Doe v. Doe 1* (2012) 208 Cal.App.4th 1185, 1188-1189.)

B. Analysis

Appellants alleged that under section 510, the DAA was required to pay them overtime compensation for any work in excess of eight hours in one workday and any work in excess of 40 hours in any workweek. (§ 510, subd. (a).) The DAA demurred to appellants' section 510 claim on the ground that section 510 does not apply to public entity employees. Appellants responded to the demurrer, stating that they "expected" that the trial court would sustain the demurrer because the court would be bound to follow *Johnson v. Arvin-Edison Water Storage District* (2009) 174 Cal.App.4th 729 (*Johnson*), which held that section 510 does not apply to public entities. Nonetheless, appellants asserted the

42

section 510 claim to preserve this issue for appellate review, stating that the Supreme Court has apparently not decided the question whether non-constitutionally-immune public employers are subject to section 510. We agree that section 510 does not apply to the DAA. Nevertheless, we conclude that the trial court erred in sustaining the demurrer without leave to amend because appellants have shown how they can amend their complaint to allege a potentially valid claim for overtime compensation.

California law, codified at section 510, requires overtime compensation for "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek." (§ 510, subd. (a).) In interpreting section 510, the *Johnson* court recognized the established rule that public entities are not subject to a general statute unless expressly included. (*Johnson*, *supra*, 174 Cal.App.4th at p. 736.) The *Johnson* court also recognized an exception to this rule, i.e., that government agencies are excluded from a statute only if their inclusion would result in an infringement upon sovereign governmental powers. (*Id.* at p. 738.) "A statute infringes upon a public entity's sovereign powers if the statute affects the entity's governmental purposes and functions." (*Ibid.*)

Applying maxims of statutory construction to the Labor Code, the *Johnson* court held that the water district, as a public entity, was exempt from section 510, noting that the Legislature expressly refers to public entities when it intends them to be included. (*Johnson*, *supra*, 174 Cal.App.4th at pp. 736-738.) Thus, the indicia of legislative intent led the *Johnson* court to conclude that a water district was exempt from section 510, but "[i]n any event, the [water] District [was] also exempt" under the sovereign powers canon of statutory interpretation. (*Id.* at p. 738.) Specifically, the *Johnson* court noted that the

43

Water Code granted the water district the statutory power to set employees' compensation (citing Wat. Code, §§ 39059, 43152, subd. (c)) and concluded that subjecting the water district to section 510 would infringe upon its sovereign powers to set employees' compensation. (*Johnson*, *supra*, at p. 739.)

Appellants assert that *Johnson* is distinguishable because the water district had the regulatory power to set employees' compensation under the Water Code. Appellants note that unlike the water district in *Johnson*, the DAA does not have sovereign power over employee compensation and thus, should be required to comply with section 510. The DAA contends that appellants did not make this argument below and that they have thus forfeited the issue. On the merits, the DAA asserts that applying section 510 would interfere with its sovereign power and its ability to perform its legislative purpose. Because the question presented is one of law, we exercise our discretion to resolve the issue on the merits. (*UFITEC, S.A. v. Carter* (1977) 20 Cal.3d 238, 249, fn. 2.)

Appellants contend that section 510 applies to "any work" and that this plain language permits no exception. However, whether requiring the DAA to comply with section 510 infringes on the DAA's sovereign powers (i.e., its governmental purposes and functions) cannot be determined by examining section 510 in isolation. (*Johnson*, *supra*, 174 Cal.App.4th at p. 738.) Rather, wage and hour claims in California are governed "by two complementary and occasionally overlapping sources of authority[;]" namely, the Labor Code as enacted by the Legislature and a series of wage orders adopted by the Industrial Welfare Commission (IWC). (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026 (*Brinker*).) The IWC has constitutional and statutory

44

authority to adopt wage orders prescribing, among other things, maximum hours of employment for employees in California. (Cal. Const., art. XIV, § 1; §§ 70-74, 1171-1204; *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 795.) Section 1173 gives the IWC the statutory authority to regulate the working conditions of employees in California, including setting standards for maximum hours. (*Sheppard v. North Orange County Regional Occupational Program* (2010) 191 Cal.App.4th 289, 304 (*Sheppard*).)

The first paragraph of section 1173 provides: "It is the continuing duty of the [IWC], . . . to ascertain the wages paid to all employees in this state, to ascertain the hours and conditions of labor and employment in the various occupations, trades, and industries in which employees are employed in this state, and to investigate the health, safety, and welfare of those employees." Notably, "section 1173 broadly refers to " 'all employees in this state,' " which necessarily includes employees working in the public sector. (*Sheppard*, *supra*, 191 Cal.App.4th at p. 305.)

Wage orders are codified in Title 8 of the California Code of Regulations. (Cal. Code Regs., tit. 8, §§ 11000, et seq.)[9] Wage orders are "quasi-legislative regulations and are construed in the same manner as statutes under the ordinary rules of statutory construction." (*Securitas Security Services., USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 121.) Although the Legislature stopped funding the IWC in 2004, its wage orders remain in full force and effect. (*United Parcel Service Wage & Hour Cases* (2010) 190 Cal.App.4th 1001, 1009, at fn. 2.) IWC wage orders are given "extraordinary

---

[9] We grant the DAA's request for judicial notice of certain wage orders, official notices pertaining to wage notices, and legislative materials pertaining to certain wage orders. (Evid. Code, §§ 452, subd. (b) & 459.)

45

deference, both in upholding their validity and enforcing their specific terms." (*Martinez v. Combs* (2010) 49 Cal.4th 35, 61.) To the extent a wage order and a statute overlap, we will seek to harmonize them, as with any two statutes. (*Brinker*, *supra*, 53 Cal.4th at p. 1027.)

Similar to the FLSA, the IWC has a wage order regulating the amusement and recreation industry. (Cal. Code Regs., tit. 8, § 11100 [wage order 10-2001].) The wage order defines an amusement and recreation industry as "any industry, business, or establishment operated for the purpose of furnishing entertainment or recreation to the public, including but not limited to theaters, dance halls, bowling alleys, billiard parlors, skating rinks, riding academies, racetracks, amusement parks, athletic fields, swimming pools, gymnasiums, golf courses, tennis courts, carnivals, and wired music studios." (*Id.* at (2)(A).) Wage order 10-2001 applies to "all persons employed in the amusement and recreation industry" and limits them to an eight-hour work day or 40 hours per work week. (Cal. Code Regs., tit. 8, § 11100(1) & (3)(A)(1).) Wage order 10-2001 contains a number of exceptions to this requirement. (Cal. Code Regs., tit. 8, § 11100(1)(B), (C) & (D).) As relevant here, it exempts "employees directly employed by the State or any county, incorporated city or town or other municipal corporation, or to outside salespersons." (Cal. Code Regs., tit. 8, § 11100(1)(C).)

Appellants do not contend that wage order 10-2001 does not apply to the DAA, nor could they so argue, since the DAA is a "state institution" (Food & Agric. Code, § 3953) created for the express purposes of "[h]olding fairs, expositions and exhibitions" and "[c]onstructing, maintaining, and operating recreational and cultural facilities of general public interest." (Food & Agric. Code, § 3951.)

46

Notably, a prior version of wage order 10 (wage order 10-1989) provided that employees in the amusement and recreation industry "shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek" unless paid overtime compensation. (Cal. Code Regs., tit. 8, § 11100(3)(A), as of 1989.) Nonetheless, wage order 10-1989 exempted from its provisions "employees directly employed by the State or any county, incorporated city or town or other municipal corporation, or to outside salespersons." (Cal. Code Regs., tit. 8, § 11100(1)(B), as of 1989.)

"[In 1999,] the Legislature passed the 'Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999.' (Stats. 1999, ch. 134, § 1, p. 1820, adding and amending provisions of Lab. Code, § 500 et seq.) The act amended section 510, which provides that a California employee is entitled to overtime pay for work in excess of eight hours in one workday or 40 hours in one week. (§ 510, subd. (a).)" (*Harris v. Superior Court* (2011) 53 Cal.4th 170, 177-178.) Despite the passage of section 510 in 1999, the current version of wage order 10 (wage order 10-2001, effective January 1, 2001) also provides for overtime compensation, but *continues to exempt* public employees in the amusement and recreation industry from the overtime requirement. (Cal. Code Regs., tit. 8, § 11100(1)(C) & (3)(A)(1).)

Thus, when it enacted section 510, the Legislature was aware that wage order 10 exempted public employees in the amusement and recreation industry from overtime compensation. (*In re Greg F.* (2012) 55 Cal.4th 393, 407 ["The Legislature is presumed to be aware of all laws in existence when it passes or amends a statute."].) Accordingly, when section 510 and wage order 10 are viewed together, the inescapable conclusion is that

47

public employees in the amusement and recreation industry are exempt from state overtime requirements.

To avoid this result, appellants contend that wage order 10 does not create an exemption to the statutory requirement for overtime compensation contained in section 510 because wage order 10 states, "*the provisions of this order* shall not apply to any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district." (Cal. Code Regs., tit. 8, § 11100, Section 1(C), italics added.) Appellants claim that wage order 10 does not advance the DAA's position because it does not purport to exempt public employees from section 510. We reject appellants' argument. The express language of wage order 10 essentially implements section 510. (Cal. Code Regs., tit. 8, § 11100(3)(A)(1) ["employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek" unless paid overtime compensation]; compare, § 510, subd. (a) ["Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek…" is entitled to overtime compensation].) Wage order 10 then exempts public employees in the amusement or recreation industry from the overtime requirement. (Cal. Code Regs., tit. 8, § 11100, subd. (1)(C).)

Moreover, appellants' argument ignores section 1173 (in effect at the time the Legislature enacted section 510), which gives the IWC the statutory authority to set maximum hours and refers to " 'all employees in this state,' " which necessarily includes employees working in the public sector. (*Sheppard*, *supra*, 191 Cal.App.4th at p. 305.) Additionally, section 515, which was enacted along with section 510, provides that

48

"nothing in this section requires the commission to alter an exemption from provisions regulating hours of work that was contained in a valid wage order in effect in 1997." (§ 515, subd. (b).) As we previously noted, since 1989, wage order 10 has continuously exempted public employees in the amusement and recreation industry from overtime requirements, both before and after the enactment of section 510. Thus, the trial court properly sustained the demurrer to the section 510 claim.

C. Leave to Amend

Appellants contend that this court should hold that the DAA is required to comply with section 510 when it loans out its employees to outside promoters to support "interim events," such as gun shows, bridal bazaars, private parties, weddings, Christmas tree sales, hot tub sales, home and garden shows, and charges the outside promoters the labor costs of employing the employees, plus a markup. They assert that when they are performing work for these outside entities, they are not public employees performing exempt work. Appellants concede that their complaint did not contain any averments regarding the DAA's loaning of its employees to outside promoters to support interim events, but claim that such averments were not required because the DAA bore the burden of proving the exemption from section 510 as an affirmative defense. To the extent that we disagree with this contention, appellants argue that they should be allowed leave to amend to add averments that conform to the evidence presented at trial.

"[A] demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense." (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 183.) As we have discussed, the trial court

properly sustained the DAA's demurrer because the face of the complaint disclosed that the DAA is exempt from the requirements of section 510. (*Ante*, pt. II.B.) Thus, we next consider whether appellants should be allowed leave to amend their complaint.

As we have already noted, it is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that the plaintiff can amend the complaint to cure its defects. (*City of Atascadero*, *supra*, 68 Cal.App.4th at p. 445.) It is irrelevant that appellants did not seek leave to amend in the trial court, since this issue is always open on appeal. (Code Civ. Proc., § 472c, subd. (a).) Appellants must show in what manner their pleading can be amended and how the amendment changes the legal effect of the pleading. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) In this regard, appellants assert that they can amend the complaint to allege that when they work on interim events, the DAA is a joint employer with the outside promoters and must therefore comply with section 510.

Where joint employment exists, all employers are individually responsible for compliance with the FLSA. (*Bonnette v. Calif. Health & Welfare Agency* (9th Cir. 1983) 704 F.2d 1465, 1469.) Courts examining whether joint employment exists under the FLSA consider a number of factors, including whether the alleged additional employer: had the power to hire and fire employees; supervised and controlled employee work schedules or employment conditions; determined the rate and method of payment; maintained employment records; owned the facilities where the employee worked; and made significant investments in equipment and facilities. (*Bonnette v. Calif. Health & Welfare Agency*, *supra*, 704 F.2d at p. 1470.)

50

Joint employment is also recognized under California law. "Joint employment occurs when two or more persons engage the services of an employee in an enterprise in which the employee is subject to the control of both." (*In-Home Supportive Services v. Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 732 [addressing dual employment and dual workers' compensation liability].) " 'Employ' means to engage, suffer, or permit to work." (Cal. Code Regs., tit. 8, § 11100, Section 2(E).) An " '[e]mployee' means any person employed by an employer" and an " '[e]mployer' means any person . . . who . . . employs or exercises control over the wages, hours, or working conditions of any person." (Cal. Code Regs., tit. 8, § 11100, section 2. (F) & (G).)

In *Guerrero*, *supra*, 213 Cal.App.4th 912, an in-home support services (IHSS) worker brought an action against the program recipient, the county and the county's IHSS public authority for unpaid wages and overtime under the FLSA and the Labor Code. (*Id.* at pp. 917-919.) The *Guerrero* court concluded that the trial court erred in sustaining a demurrer to the Labor Code claims because the applicable wage order did not expressly exempt public employees from its provisions. (*Id.* at p. 954.) It also concluded that the trial court ignored the "joint employee doctrine," holding that plaintiff's rendering of services to the program recipient did not preclude her from being a dual employee of the program recipient and real parties, the county and the county's IHSS public authority. (*Id.* at pp. 917, 955.)

We conclude that appellants should be permitted to amend their section 510 claim since they have shown how they can potentially amend their complaint to state a valid claim under the joint employee doctrine. Accordingly, we reverse that part of the order

51

sustaining the demurrer without leave to amend and direct the trial court to grant appellants leave to amend the complaint.  In so doing, we express no view as to the ultimate merits of appellants' section 510 claim.

DISPOSITION

The order sustaining the demurrer to the Labor Code section 510 claim without leave to amend is reversed with directions to grant appellants leave to amend their complaint.  The judgment on the FLSA claim is affirmed.  In the interests of justice, the parties are to bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


AARON, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.

52